MIGUEL *v.* McCARL, COMPTROLLER GENERAL,
ET AL.

No. 435. Argued February 14, 15, 1934.—Decided March 5, 1934.

*Mr. Samuel T. Ansell,* with whom *Mr. George M. Wilmeth* was on the brief, for petitioner.

*Mr. Harrell O. Hoagland,* with whom *Mr. R. L. Golzé* was on the brief, for McCarl, Comptroller General, respondent.

446

*Solicitor General Biggs,* with whom *Messrs. Erwin N. Griswold,* of the Department of Justice, and *Archibald King,* of the Office of the Judge Advocate General of the War Department, were on the brief, argued that the judgment should be reversed.

448

MR. JUSTICE SUTHERLAND delivered the opinion of the court.

The petitioner served as an enlisted man in the Philippine Scouts under successive enlistments from October 1, 1901, until October 31, 1931, at which time, upon proper

application, he was, by order of the Secretary of War acting for the President, placed on the retired list of the army with the rank of master sergeant in pursuance of the Act of March 2, 1907, c. 2515, 34 Stat. 1217, which provides:

"When an enlisted man shall have served thirty years either in the Army, Navy, or Marine Corps, or in all, he shall, upon making application to the President, be placed upon the retired list, with seventy-five per centum of the pay and allowances he may then be in receipt of, . . ."

A voucher for the retired pay and allowances for the month of November, 1931, was presented to the army disbursing officer for Manila, who, without making payment, forwarded it to the Comptroller General through the respondent Coleman, Chief of Finance, with a request for "an advance decision as to the legal authority for payment." The Comptroller General, on January 19, 1932, rendered a decision holding that " the retirement of enlisted men of the Philippine Scouts is not authorized even by the remotest implication of the laws," and advising the disbursing officer that he was not authorized to pay the voucher, which would be retained in the files of the office of the Comptroller General.

Petitioner thereupon brought this suit in the Supreme Court of the District of Columbia to enjoin the Comptroller General from interfering with the respondent Coleman, Chief of Finance, or with any finance or disbursing officer of the army, to prevent payment to petitioner of the retired pay and allowances due for the month of November and subsequent months; and to enjoin and command the Comptroller General to return forthwith to the disbursing officer the voucher then being retained in the files of his office. The bill further sought to enjoin and command respondent Coleman, Chief of Finance, to pay or cause to be paid to petitioner such retired pay and

allowances for November and subsequent months. Motions of respondents to dismiss the bill were denied by the supreme court of the District, and thereupon respondents filed separate answers. A motion to strike these answers and for a decree in favor of petitioner was granted by the supreme court of the District. Final decree against respondents followed in accordance with the prayer of the bill.

Upon appeal to the court of appeals of the District, this decree was reversed and the cause remanded to the supreme court of the District with instructions to dismiss the bill. 62 App.D.C. 259; 66 F. (2d) 564. The holding of that court rested upon the view that mandamus would not lie against the Comptroller General to determine the right of a retired member of the Philippine Scouts to receive retirement pay and allowances, because the question of his status was disputed in good faith on the merits; and that neither mandamus nor injunction should issue "in a case of doubtful inference from statutes of uncertain meaning, for in such circumstances the duty sought to be controlled is regarded as involving the character of judgment or discretion."

No appearance is made here by respondent Coleman, and no brief filed or argument made in his behalf. The Solicitor General, however, has filed a comprehensive brief (in which the Judge Advocate General of the War Department joins) urging the correctness of the petitioner's contention and uniting with him in challenging the decision below. The Comptroller General, contending that the decision is right and should be affirmed, states the point of inquiry to be whether the Chief of Finance and the Comptroller General can be compelled by mandatory injunction, the one to pay or cause to be paid the voucher in question, and the other to approve and allow credit for such payment, after the latter, on application for a decision by the disbursing officer before whom the

voucher was pending for payment, has rendered his decision holding such payment not authorized under existing appropriations.

The principal question upon which the case turns, and the only one we need consider, is whether the statutes involved so plainly require the payment of the voucher that such payment constitutes a mere ministerial act on the part of the disbursing officer.. Following numerous cases theretofore decided, the applicable rule in respect of the writ of mandamus is stated in *Wilbur* v. *United States,* 281 U.S. 206, 218–219, as follows:

" Mandamus is employed to compel the performance, when refused, of a ministerial duty, this being its chief use. It also is employed to compel action, when refused, in matters involving judgment and discretion, but not to direct the exercise of judgment or discretion in a particular way nor to direct the retraction or reversal of action already taken in the exercise of either.

" The duties of executive officers, such as the Secretary of the Interior, usually are connected with the administration of statutes which must be read and in a sense construed to ascertain what is required. But it does not follow that these administrative duties all involve judgment or discretion of the character intended by the rule just stated. Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command it is regarded as being so far ministerial that its performance may be compelled by mandamus, unless there be provision or implication to the contrary. But where the duty is not thus plainly prescribed but depends upon a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus."

In *Roberts* v. *United States,* 176 U.S. 221, this court held that where the proper construction of a statute is

clear, the duty of an officer called upon to act under it is ministerial in its nature and may be compelled by mandamus. The opinion points out (p. 231) that every such statute to some extent requires construction by the officer; that he must read the law and, therefore, in a certain sense, construe it in order to form a judgment from its language what duty he is required to perform. "But that does not necessarily and in all cases make the duty of the officer anything other than a purely ministerial one. If the law direct him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language by the officer. Unless this be so, the value of this writ is very greatly impaired." This view of the matter has been uniformly approved in subsequent decisions. See, for example, *Lane* v. *Hoglund,* 244 U.S. 174, 181; *Wilbur* v. *Krushnic,* 280 U.S. 306, 318. The mandatory injunction here prayed for is in effect equivalent to a writ of mandamus, and governed by like considerations. *Warner Valley Stock Co.* v. *Smith,* 165 U.S. 28, 31, 33. With the foregoing well settled rule in mind we turn to the pertinent legislation.

Section 36 of the Act of February 2, 1901, c. 192, 31 Stat. 748, 757, authorizes the President, when in his opinion conditions in the Philippine Islands justify such action, " to enlist natives of those islands for service in the Army, to be organized as scouts, with such officers as he shall deem necessary for their proper control, or as troops or companies, as authorized by this Act, for the Regular Army."

Petitioner enlisted under this act, and it does not admit of doubt that thereby he enlisted " for service in the Army " as a member of the organization of Philippine Scouts. One who enlists for service in the army certainly

becomes " an enlisted man . . . in the Army "; and when he " shall have served thirty years " therein, he falls within the plain terms of the Act of March 2, 1907, *supra,* and, in accordance therewith, is entitled to " be placed upon the retired list " with the pay and allowances therein prescribed. Statutory provisions so clear and precise do not require construction. In such case, as this court has often held, the language is conclusive. " There can be no construction where there is nothing to construe." *United States* v. *Shreveport Grain Co.,* 287 U.S. 77, 83, and cases cited.

The court below cites § 26 of the National Defense Act of June 3, 1916, 39 Stat. 166, 185; §§ 22 and 26 of the Act of June 4, 1920, 41 Stat. 759, 770, 775; and § 17 of the Act of June 10, 1922, 42 Stat. 625, 632, in support of its view that this is a case of " doubtful inference from statutes of uncertain meaning " in the sense of the rule stated in *Wilbur* v. *United States, supra,* hereinbefore quoted. But those sections fail, in our opinion, to disclose anything which conflicts with the positive words of § 36 of the Act of 1901, *supra.* Section 26 of the 1916 act simply provides that captains and lieutenants of the Philippine Scouts who are citizens of the United States shall be entitled to retirement under the laws governing retirement of enlisted men of the regular army, but to be retired with the grade held by them at the date of their retirement. The section is confined to the officers named and has nothing to do with enlisted men. The provision was necessary, as pointed out in the brief of the Solicitor General, because prior to the enactment of the Act of June 4, 1920, *supra,* these officers were usually enlisted men of other branches of the regular army, whose appointments were of a provisional character. Special legislation was therefore required to enable them to retire with the pay and allowances of officers instead of enlisted men. The provisions in the Act of June 4, 1920, which are referred

454

to, relate to " all officers of the Philippine Scouts," but it is expressly provided that nothing in the act shall alter the status of enlisted men. Section 17 of the Act of June 10, 1922, likewise relates to officers and former officers of the Philippine Scouts, according them the status of officers in the regular establishment; and again it is provided that the act shall not be construed as affecting the enlisted men.

It is hard to see how it reasonably can be thought that these acts have any effect upon the status of the enlisted men, since they are limited, in express terms, to officers. They do not modify or purport to modify in any way the provisions of § 36 of the Act of 1901 in respect of such enlisted men. If that conclusion were not clear, the provisos would effectually settle the doubt. Putting aside those acts, therefore, as irrelevant, we have only to consider § 36 of the Act of 1901, which plainly establishes the status of petitioner as an enlisted man in the army, and the Act of March 2, 1907, which just as plainly directs that such an enlisted man, having served thirty years as such, shall be placed upon the retired list. In this situation the duty of the disbursing officer to pay the voucher in question " is so plainly prescribed as to be free from doubt and equivalent to a positive command," and, therefore, is " so far ministerial that its performance may be compelled by mandamus." *Wilbur* v. *United States, supra*, pp. 218–219. It seems unnecessary to add that this duty cannot be affected by a contrary decision of the Comptroller General.

It is said by the Comptroller General that there was no existing appropriation of public money available for payment of retired pay and allowances to petitioner. But this statement quite evidently is made only in the view that the petitioner does not come within the retirement provision of the Act of March 2, 1907, since there was

available an existing appropriation for retired pay and allowances of enlisted men retired under that provision.

The Chief of Finance is charged by law with the duty of disbursing all funds of the War Department, including the pay of the army. U.S.C., Title 10, § 172. The disbursing officer to whom the voucher was presented for payment, therefore, is simply a subordinate of the Chief of Finance, subject to his control and direction, and the suit was properly brought against the latter. The purpose of the suit was to control the action of the Chief of Finance, that is, to compel him to pay or cause to be paid the voucher in question. The disbursing officer as the mere agent of his superior officer is not an indispensable, although he might have been joined as a proper, party. Compare *Warner Valley Stock Co.* v. *Smith, supra,* pp. 34–35; *Gnerich* v. *Rutter,* 265 U.S. 388, 391–393; *Webster* v. *Fall,* 266 U.S. 507; *Alcohol Warehouse Corp.* v. *Canfield,* 11 F. (2d) 214; *Dami* v. *Canfield,* 5 F. (2d) 533. We find no merit in the contention that the United States is a necessary party and this suit not maintainable without its consent, *Payne* v. *Central Pac. Ry. Co.,* 255 U.S. 228, 238; or in the further contention that the suit cannot be maintained because petitioner has a remedy at law in the court of claims for his retired pay. *Smith* v. *Jackson,* 246 U.S. 388; 241 Fed. 747, 760.

It follows that the decree of the court below, in so far as it directs a dismissal of the bill as against the respondent Coleman, must be reversed, and the decree of the supreme court of the District in respect of that respondent affirmed.

As to the Comptroller General, a different situation is presented. The request for an advance decision from him came from the Chief of Finance at the request of the disbursing officer. U.S.C. (Supp.), Title 31, § 74. The Comptroller General undertook nothing on his own

motion, and, as he asserts, did nothing either to coerce or invite the application for an advance decision. Having given that decision, his function in that regard ceased. The effect of the decision is a matter purely of law. Obviously, there is no occasion for compelling him by mandamus to recall his decision. However, he continues to retain possession of the voucher, upon the theory evidently that, having determined that the disbursing officers were without authority to make payment, it belongs in the files of his office. The view of the supreme court of the District, that a mandatory injunction will lie to compel a return of that voucher to the disbursing officer and to enjoin the Comptroller General from any interference with the Chief of Finance tending to prevent payment thereof to petitioner, has not, in the light of the case as now made, met with the concurrence of a majority of this court. In that situation, we, therefore, affirm, without discussion, the decree of the District court of appeals in so far as it relates to the Comptroller General. But it is not to be supposed that, upon having his attention called to our decision, the Comptroller General will care to retain possession of the voucher or that he will interfere in any way with its payment.

The decree of the court below will accordingly be reversed as to the respondent Coleman, and affirmed as to the Comptroller General. But, in accordance with precedent, *Wilbur* v. *Krushnic, supra,* p. 319, the mandatory injunction to Coleman should issue directing a disposal of petitioner's application for pay upon the merits, unaffected by the opinion of the Comptroller General, and in conformity with the views expressed in this opinion as to the proper interpretation and application of the pertinent statutes. A writ in that form is better suited to the circumstances than that indicated by the supreme court of the District.

*Reversed in part.*
*Affirmed in part.*