**UNITED STATES ex rel. WELCH v. FARLEY, Postmaster General.**

**No. 88151.**

District Court of the United States for the District of Columbia.

Feb. 1, 1937.

Fred B. Rhodes, Cooper B. Rhodes, and Robert F. Klepinger, all of Washington, D. C., for plaintiff.

Leslie C. Garnett, U. S. Atty., and Howard Boyd, Asst. U. S. Atty., both of Washington, D. C., for defendant.

COX, District Judge.

Plaintiff was appointed July 23, 1929, as a railway mail clerk, now classified as a railway postal clerk, and has been employed in a post office known prior to June 14, 1934, as a class B terminal. He seeks mandamus to require the Postmaster General to classify him in grade 5 of the railway mail service as of July 1, 1933, with salary in that grade from July 1, 1934; or, judgment under the Declaratory Judgment Act 28 U.S.C.A. § 400 that he is entitled to be so classified and to receive the salary of that grade since July 1, 1934.

The plaintiff has demurred to defendant's answer which does not deny any essential fact set out in the petition. Questions of law only are presented involving construction of statutes.

The Act of February 28, 1925 (43 Stat. 1062, 39 U.S.C.A. § 610 et seq.), divided railway postal clerks into two classes and seven grades, 1 to 7, with compensation increasing for each successive grade; required promotions to be made successively at the beginning of the quarter following a total satisfactory service of 306 days in the next lower grade; and fixed grade 5 as the limit to which clerks in class B terminals could progress by such promotions.

The plaintiff has rendered continuous and satisfactory service; and, except for the legislation hereinafter considered, he would have been automatically promoted to grade 4 on July 1, 1932, and to grade 5 on July 1, 1933.

The Legislative Appropriation Act for 1933, approved June 30, 1932 (47 Stat. 403), in section 201 of pt. 2, Tit. 2, commonly known as the Economy Act, suspended during the fiscal year ending June 30, 1933, "all provisions of law which confer upon civilian or noncivilian officers or employees of the United States * * * automatic increases in compensation by reason of length of service or promotion," and provided that "this section shall not be construed to deprive any person of any increment of compensation received through an automatic increase in compensation prior to July 1, 1932."

It may be noted that by the express terms of section 201 only "increases in compensation by reason of length of service or promotion" are suspended. The act apparently does not purport to suspend promotion in rank or grade.

Section 201 (Economy Act [5 U.S.C.A. § 673 note]) was continued in force during the fiscal year ending June 30, 1934, by section 4 (a), chapter 212, of the Act of March 3, 1933 (47 Stat. 1513 [5 U.S.C.A. § 673 note]), and by section 4 (a), title 2, chapter 3, of the Act of March 20, 1933 (48 Stat. 13 [5 U.S.C.A. § 673 note]); so that the economy period, during which automatic increases in compensation were suspended, extended from July 1, 1932, to June 30, 1934, inclusive.

By the Independent Office Appropriation Act for the fiscal year 1935, approved March 28, 1934, section 24, subdivision (1) (48 Stat. 522), section 201 (Economy Act), supra, was amended by inserting at the end thereof, "This section shall not apply during the fiscal year * * * 1935. * * * This amendment shall not authorize the payment of back compensation." After this amendment of the Economy Act, the Postmaster General, by letter of May 7, 1934, called upon the Comptroller General for a ruling upon the following interpretation placed upon the amended act: "It is the opinion of the Post Office Department that an employee on July 1, 1934, should be assigned to the salary grade he would have reached had not the automatic promotions been temporarily suspended, although it is understood that the employee would not be entitled to any back compensation."

In reply, the Comptroller General, on May 24, 1934, ruled, contrary to this interpretation of the Post Office Department, that section 201, in suspending automatic increases in compensation, completely suspended the operation of all federal statutes authorizing such increases; so that no service during the economy period could be included in computing longevity of service for the purpose of promotion to higher grade or rank (13 Comp.Gen.Dec. 384).

Congress disapproved this ruling or decision of the Comptroller General as clearly appears from the report of June 13, 1934, of the House Committee on the Post Office and Post Roads, No. 1983, 73d Congress, 2d Session, and the action of Congress thereon. That report, setting out in full the objectionable decision of the Comptroller General, recommended, and Congress embodied in the Act of June 27, 1934 (48 Stat. 1265), amending the Economy Act, the provision that in administering section 201 (Economy Act), as amended, "all service rendered by postal and other officers and employees prior to July 1, 1932, and subsequent to June 30, 1932, shall be credited to the officers or employees and such officers or employees promoted to the grade to which they would have progressed had section 201 [Economy Act] * * * not been enacted."

Clearer or more definite language could not have been used. By express command of the statute all service rendered within as well as prior to the economy period shall be credited to officers and employees and they shall be promoted to the grade to which they would have progressed had section 201 (Economy Act) not been enacted.

This provision, enacted to clarify and make certain "the purpose and intent of Congress" (Cong.Rec. 73d Congress, Vol. 78, No. 134, p. 12112), preserves to officers and employees automatic promotions in grade or rank, authorized by law, free from

any adverse effect of the Economy Act. The character of that act is thus conclusively fixed as an act temporarily denying increase in compensation, but in no wise restricting progress in grade or rank resulting from longevity of service.

While the passage of the Act of June 27, 1934, supra, was under consideration by Congress, a statute was enacted on June 14, 1934 (48 Stat. 962, 39 U.S.C.A. 618a), commonly referred to as the Terminal Reclassification Act, wherein it is provided that "the clerks in said terminal railway post offices shall be classified as railway postal clerks and progress successively to grade 4 * * * provided * * * that no employee in the Postal Service shall be reduced in rank or salary as a result of the provisions of this act [section]."

Thereafter, on July 12, 1934, in response to a request of the Postmaster General, the Comptroller General decided and instructed the Postmaster General (14 Comp. Gen.Dec. 31-33) that railway postal clerks in the position of the plaintiff (who but for the Economy Act would have been receiving compensation in grade 5 from and after July 1, 1933) should not be classified in grade 5, but should be classified in grade 4 by virtue of the above-quoted provision of the Terminal Reclassification Act. In effect, he held that, so far as railway postal clerks were concerned, his prior ruling was unaffected, and that, as to them, advance in rank and increase in salary were both suspended during the economy period. In accordance with this ruling of the Comptroller General, the plaintiff is classified in grade 4.

Obviously, the two statutes are in pari materia. Where a general statute and a special statute have both been enacted, in terms that are inconsistent, the special statute may be accepted as governing the particular class or subject-matter to which it is directed. But where the statutes can reasonably be reconciled, both must be given effect. Here the Economy Act in general terms was directed to automatic increases in compensation of all officers and employees of the United States. As if to prevent the possibility of argument that the Terminal Reclassification Act was intended to exclude railway postal clerks from the benefits of the amended Economy Act, the amendment of June 27, 1934, departing from the general language originally used, specifically declares that all services, including services in the economy period, rendered by postal and other employ- ees shall be credited to them and such employees promoted accordingly.

Moreover, just as the original Economy Act impliedly and the amendment to that act of June 27, 1934, specifically recognized the distinction between advances in rank and increases in compensation, so also the Terminal Reclassification Act recognized this distinction in its proviso, "that no employee in the Postal Service shall be reduced in rank or salary as a result of the provisions of this act [section]."

The Terminal Reclassification Act is obviously not retroactive. It plainly relates only to those automatic promotions of railway postal clerks to be made thereafter, and not to promotions in rank earned prior to that act. The right of the plaintiff to promotion to grade 5 accrued July 1, 1933. The Terminal Reclassification Act does not purport to affect that right. The Economy Act suspended only increases in his compensation up to June 30, 1934, and the amendment thereto of June 27, 1934, made sure that his right to promotion in rank accruing in the economy period should be preserved to him as if the Economy Act had not been enacted, and declares that he shall be promoted accordingly.

Thus, giving each statute its full effect, the two statutes stand harmoniously together. There appears no real conflict or repugnancy between them. They seem so plainly to prescribe the duty of the Postmaster General to promote the plaintiff to grade 5 "as to be free from doubt and equivalent to a positive command." Miguel v. McCarl, 291 U.S. 442, 451, 454, 54 S.Ct. 465, 467, 78 L.Ed. 901; Wilbur v. United States, 281 U.S. 206, 218, 219, 50 S.Ct. 320, 324, 74 L.Ed. 809.

It is considered the defendant's answer sets up no defense to the petition and that the plaintiff's demurrer thereto should be sustained.