## LOWRY v. WOODRING, Secretary of War.*
### No. 7212.

United States Court of Appeals for the
District of Columbia.
Argued Nov. 8, 9, 1938.
Decided Dec. 12, 1938.

*Writ of certiorari denied 59 S.Ct. 643, 83 L.Ed. ——.

Philip W. Lowry, of New York, N. Y., pro se.

David A. Pine, U. S. Atty., and Harry L. Underwood, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

GRONER, C. J.

On November 11, 1917, petitioner was commissioned from civil life a provisional second lieutenant of infantry in the United States regular army. He was subsequently promoted to provisional first lieutenant, served overseas for approximately a year, and resigned his commission August 12, 1919. In May, 1924, Congress passed the World War Adjusted Compensation Act (Bonus Act.)[1] In accordance with its Section 302,[2] petitioner filed with the Secretary of War successive applications for adjusted compensation, the last in 1936, all of which were disallowed on the ground that petitioner was excluded from receiving the benefits of the Act by Section 202(b).[3] Petitioner accordingly applied to the District Court for a writ of mandamus to compel the Secretary of War to issue to him the certificate provided for in the Act. A rule to show cause issued, and the Secretary answered. Petitioner then filed a plea and traverse, to which the Secretary demurred, and the court, without opinion, sustained the demurrer and dismissed the petition. This appeal followed.

There are no disputed facts in the case and the decision depends upon the meaning of the word "holding" as used in Section 202(b) of the Act.

Petitioner's appointment to and service in the army was pursuant to Section 23 of the National Defense Act of 1916,[4] which reads: "Hereafter all appointments of persons other than graduates of the United States Military Academy to the grade of second lieutenant in the Regular Army shall be provisional for a period of two years, at the close of which period such appointments shall be made permanent if the appointees shall have demonstrated, under such regulations as the President may prescribe, their suitability * * * and should any officer become eligible for promotion to a vacancy in a higher grade and qualify therefor before the expiration of two years from the date of his original appointment, he shall receive a provisional appointment in such higher grade, which appointment shall be made permanent when he shall have qualified for a permanent appointment upon the expiration of two years from the date of his original appointment, or shall terminate if he shall fail so to qualify." ·

After the close of the war Congress struck out Section 23 and substituted the following: "All laws providing that certain appointments of officers shall be provisional for a period of time are hereby repealed."[5]

---

[1] 43 Stat. 121, 38 U.S.C. § 591 et seq., 38 U.S.C.A. § 591 et seq.

[2] 38 U.S.C.A. § 612.

[3] 38 U.S.C. § 602(b), 38 U.S.C.A. § 602 (b).

[4] 39 Stat. 181.

[5] Act of June 4, 1920, 41 Stat. 759, 771, c. 227.

Hence, if petitioner had chosen to remain in the army, his provisional commission would have lost its evanescent character and assumed the qualities of permanency. As we have seen, he resigned his commission in 1919 and was in civil life at the time the Bonus Act was passed. Section 202 of the Act, 38 U.S.C.A. § 602 specifically excluded adjusted compensation for certain types of service. Subsection (b) provided:

" * * * no allowance shall be made to— * * *

"Any individual holding a permanent or provisional commission or permanent or acting warrant in any branch of the military or naval forces, or (while holding such commission or warrant) serving under a temporary commission in a higher grade— in each case for the period of service under such commission or warrant or in such higher grade after the accrual of the right to pay thereunder. * * * "

Petitioner insists that the obvious intent of Congress in the use of the words "holding a * * * provisional commission" was to debar, not one like himself, but only those provisional officers who had chosen to remain permanently in the military service after the war; that Congress used the present participle "holding" as referring only to officers then holding provisional commissions, and that since petitioner was *not then* holding a provisional commission, he was not included among the proscribed. On the other hand, the Secretary points out, as we have seen, that when the Bonus Act was passed, Congress had repealed all laws providing for provisional appointments, as the result of which there were no persons then holding provisional commissions. Consequently, he insists, Congress necessarily used the word "holding" as referring to the period during which compensable service in the army or navy had been performed.

■ Granting, as we do for the purposes of this case, that the duty of the Secretary was wholly ministerial and that mandamus is, in the circumstances, the correct remedy,[6] we nevertheless reach the conclusion that the refusal to issue the writ was proper.

First, since all provisional commissions had been abolished when the Bonus Act was passed, any reference in that Act to persons then holding such commissions would be meaningless.

■ Second, when the essential parts of Sections 201 and 202(b) are read together, the word "holding" in the latter section clearly appears to mean holding during the period for which adjusted compensation is to be awarded. Section 201[7] provides: "The amount of adjusted service credit shall be computed by allowing the following sums for each day of active service, in excess of sixty days, in the military or naval forces of the United States after April 5, 1917, and before July 1, 1919, as shown by the service or other record of the veteran: $1.25 for each day of oversea service, and $1 for each day of home service * * *."

Section 202(b) provides that in computing the adjusted service credit no allowance shall be made, among others, to a person holding a provisional commission "for the period of service under such commission * * * after the accrual of the right to pay thereunder". These words are inconsistent with petitioner's position that "holding" means "holding in 1924". Instead, the necessary implication of the language is to exclude from participation certain definite officers whose services during the period of the war, i. e., from April 5, 1917, to July 1, 1919, were performed in one of the excluded grades. In short, we think the language of the disputed Section 202 is plain, and indicates on its face a clear policy. Each subsection excludes compensation for a certain class of service or for a period when no war connected service was being performed: (a) service as a commissioned officer above the grade of captain (or corresponding grade in other branches of the service) or service as an officer with the pay of such rank; (b) service in the capacity of a commissioned officer with the pay thereof when the commission was permanent or provisional; (c) service as civilian, cadet, or member of territorial forces or of the insular force of the navy; (d) service of men who entered the forces after the Armistice; (e) service for which commutation of quarters or subsistence was granted; (f) public health service not with the forces; (g) period of industrial or farm furlough; (h) service in construction work for which pay had al-

---

[6] Miguel v. McCarl, 291 U.S. 442, 54 S.Ct. 465, 78 L.Ed. 901; Hines v. U. S. ex rel. Cavanagh, 59 App.D.C. 267, 39 F. 2d 517.

[7] 38 U.S.C. § 601, 38 U.S.C.A. § 601.

ready been "equalized"; (i) service terminated by discharge or other release from the draft. These subsections clearly negative the idea insisted on by petitioner that Congress intended to confine the exclusion to men permanently in the military or naval service, and sufficiently indicate that the exclusion was directed to definite grades of service—as of the time of the service.

The Secretary of War has consistently construed the statute to exclude persons in the situation of this petitioner. This administrative interpretation, we think, is in all respects correct, and in this view the denial of the writ by the lower court was proper. The judgment is therefore affirmed.

Affirmed.