LIGGETT & MYERS TOBACCO COMPANY, INC., Petitioner and Appellant, v. RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Respondent and Appellee.

No. 8895. Argued May 2, 1944.—Decided July 28, 1944.

*H. S. McConnell* for appellant. *Jesús A. González, Acting Attorney General (M. Rodríguez Ramos* on the brief), and *P. A. Rodríguez Forteza, Deputy Attorney General,* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

The question to be determined in this appeal is whether the Treasurer of Puerto Rico may be compelled by mandamus to refund in internal revenue stamps the value of stamps which were affixed and cancelled on taxable articles sent from the United States to Puerto Rico and destroyed before reaching the Island because the boat which was carrying them was sunk by enemy action.

There is no controversy as to the facts of the case. The appellant, owner of a cigarette factory established in Richmond, Virginia, bought around the months of January and February, from the Puerto Rico Stamp Agent in New York internal-revenue stamps at four and eight cents each in the total amount of $71,760, in order to ship a certain amount of cigarettes to Puerto Rico. It affixed and cancelled all the stamps on the cigarettes packages and shipped them to San Juan and Ponce via S.S. Bárbara of the Bull Insular Line which left Baltimore, Maryland, about the 24th of February, 1942. The Bárbara was sunk by enemy action and for that reason the cigarettes as well as the internal-revenue stamps affixed to the packages were destroyed. The appellant notified the defendant of the loss of the shipment, and sought information as to the proper procedure in order to obtain the issuance and delivery of new stamps to replace the lost ones, or else to obtain credit for their value. In compliance with appellant's request, on April 20, 1942, the Chief of the Bureau of Excise Taxes of the Treasury De-

partment wrote a letter to the firm informing it as to the data and evidence which it had to furnish, and on May 28 the appellant presented all the documentary evidence required by the Department. On August 17, 1942, the Assistant Treasurer of Puerto Rico notified the appellant that its claim had been denied, grounding his decision on the erroneous belief that what the appellant sought was the reimbursement of the value of the stamps instead of the issuance and delivery of new stamps in place of the lost ones. On December 7 the appellant moved for reconsideration of his decision, and seven days later the reconsideration was denied, on the ground that the precedents appearing from the record of the Department were not applicable to appellant's case because they all referred to cases where the stamps had been in some way destroyed while in the possession of the local buyer. The appellant then filed a petition for mandamus in the lower court where, after hearing the parties, the same was denied.

At the beginning of the trial in the court *a quo*, the plaintiff, upon being examined by the judge, made the following statements:

"We admit that no statute has been enacted by the Legislature which specifically covers these cases, we admit that there is no written regulation on this matter,[1] but we have an opinion of the Attorney General dealing with this matter, and besides, we have these witnesses who are going to testify that such has been the custom, uninterruptedly for over twenty years, of refunding destroyed stamps."

The petitioner has relied on the alleged administrative practice to such an extent for the success of his action that

---

[1] Section 94 of the Internal Revenue Act of Puerto Rico, Laws of 1925, pp. 584, 648, provides as follows:

"The Treasurer of Porto Rico shall issue such regulations as may be necessary to enforce the provisions of this Act not in conflict herewith; but until new regulations shall have been issued by the Treasurer, the rules and regulations at present in force shall continue in full force and effect, provided they are not in conflict herewith."

if the same should prove to be illegal or inapplicable to its case, the petition for mandamus should be denied.

Let us now see the scope of the administrative practice. From the testimony of plaintiff's witness, Florencio Picó, Chief of the Bureau of Excise Taxes, we take the following:

"Q. Can you explain to the court what is the practice, if any, in the Treasury Department, as to refund for damaged or spoiled stamps? . . .

"A. The practice which has been followed in the Treasury Department for some years is, I believe, an elementary practice. A taxpayer brings cigarettes to Puerto Rico, . . . those cigarettes have their internal-revenue stamps affixed. After some time when the taxpayer finds that the cigarettes are spoiled, he asks the Treasurer of Puerto Rico to have those cigarettes destroyed and the stamps returned or the equivalent of the stamps which have been destroyed in the cigarette packages refunded. Then the Treasurer of Puerto Rico asks the Auditor of Puerto Rico to appoint an officer from his Department and together with an officer from the Treasury Department, an internal revenue agent destroys all the spoiled cigarette packages, making a note of the corresponding stamps which are also destroyed. A certificate is then made out and signed by the agent from the Auditor's office as well as by the agent from the Treasury Department.

"Q. Who destroys those stamps?—A. The agent from the Treasury Department together with the agent from the Auditor's office, both, and they sign the certificate.

"Q. To whom is that certificate sent?—A. A copy of the certificate goes in the record of the case, and I believe that a copy is sent to the Auditor of Puerto Rico and to the Treasurer.

"Q. What do the Treasurer and the Auditor of Puerto Rico, or the corresponding officers, do after they receive the certificate? —A. Well, the practice has been that after they receive the certificate, the Auditor of Puerto Rico orders, by way of a letter of credit, that new stamps be delivered corresponding to the ones destroyed.

"Q. To whom is that letter of credit addressed?—A. Well, if the stamps are sold in New York, the order is sent to the Stamp Agent in New York. I wish that the officer in charge of that matter would correct me if I have said anything [wrong]."

Testifying as to this same particular, Luis Santaella, appellant's witness, stated the following:

"Since I worked in La Colectiva and in this business, the practice has always been to replace the damaged stamps by simply writing a letter to the Treasurer, asking him to change the damaged stamps. For example, in La Colectiva, we cancelled the stamps in the factory, that is, pursuant to the statute, we affixed the name of the manufacturer and the date on which they were used.

". . . . Very often we had to collect the cigarettes because after four or five weeks due to the humidity of our climate the cigarettes were spoiled, . . . then we wrote to the Treasurer, the Treasurer sent an agent and authorized the return of the ruined stamps."

And José Maldonado, bookkeeper in the Auditor's office, and appellee's witness, testified that for the last ten or twelve years he had been familiar with the administrative practice; that he had never dealt with a case where the stamps had been renewed or replaced without the agents from the Treasury Department and the Auditor's office witnessing the destruction of said stamps, and that the administrative practice was limited to three cases: (1) when the cigarettes became stale and the owners asked for the destruction thereof and the return of the stamps affixed; (2) when the stamps stock to each other in the factory and became useless; and (3) when the cigarettes get wet on the ship which carried them and could not be used.

Referring to said administrative practice relied on by the appellant, the following appears from the opinion of the lower court:

"Passing to the merits of the case we find that at the trial no evidence was adduced. nor was our attention called to any regulation promulgated by the Treasurer which imposed on the latter the duty to repay the amount of the internal-revenue stamps destroyed or damaged before being used, or else to issue stamps of the same kind or amount in substitution of the lost ones. The plaintiff does not allege that there is a written regulation. He contends, however, that on previous occasions (the evidence showed only five

cases), and by reason of some cigarettes having been damaged on which the internal-revenue stamps had already been affixed and cancelled, the Treasurer permitted and authorized the destruction of the stamps and of the cigarettes and ordered the issuance of new stamps to replace those destroyed. · In the cases mentioned by the petitioner, where the Treasurer issued new stamps, the cigarettes had already been *introduced* into Puerto Rico, and therefore, the revenue tax prescribed by § 16 of the Internal Revenue Law had already attached to them, it making no difference that they became spoiled after they had been *introduced* into the Island, for according in to § 39 of the Internal Revenue Law, immediately after their introduction the taxable event has occurred and the tax has to be paid. Under these circumstances we fail to understand how the Treasurer could have taken such an attitude which legally was tantamount to condoning the tax, something which cannot be lawfully done by this officer, but only by the Legislature and exclusively within certain limits indicated by the· Organic Act.''

This conclusion of the lower court is strongly criticized by the appellant. It contends that the same is erroneous especially where it holds that the practice followed by the Treasury Department is illegal. And it further alleges that the error of the court lies in not realizing that the introduction of cigarettes into Puerto Rico was not held to be taxable until August 12, 1943, on which date Act No. 116 of May 12, 1943, Laws of Puerto Rico, 1943, p. 334, became effective and that before that time the only tax to which the cigarettes were subject was on the sale, transfer, use or consumption thereof.

In our opinion the lower court was wrong in requiring that a regulation in order to be valid had to be in writing and promulgated by the Treasurer. The evidence of the petitioner as well as that of the defendant showed the existence of the administrative practice, which was conclusively proved by the fact that as soon as the petitioner notified the Department ,of the loss of the stamps and asked for information with respect to the proper procedure in order to obtain replacement thereof, the Department immediately in-

formed the appellant as to all the details of the procedure it had to follow in order to obtain the replacement of the stamps. That procedure fully conforms with the one described by the three witnesses who testified on that particular. It was not indispensable that the practice should appear in writing. *Haas* v. *Henkel*, 216 U. S. 462, 480.

The lower court likewise erred in deciding that the administrative practice was contrary to the law and in its consequence illegal, grounding such contention on the theory that when by virtue of said practice the Treasurer issued new stamps replacing the damaged or destroyed ones, the cigarettes had already been introduced into Puerto Rico and therefore the tax provided in § 16 of the Internal Revenue Law had already attached to them. This argument is based on a false premise. The Internal Revenue Law of 1925 did not levy any tax on cigarettes introduced into Puerto Rico until they were sold, transferred, used or consumed in this Island. It is true that under Act No. 17 of June 3, 1927 (p. 458), the introduction of cigarettes was taxable, but that provision had a short life, for in the next session the Legislature, by Act No. 36 of April 23, 1928 (p. 226), eliminated the tax on the introduction of cigarettes, and, as in 1925, they were only subject to tax when they were sold, transferred, used or consumed in Puerto Rico, so that even if they had been introduced into Puerto Rico, so long as none of these four acts had been performed—sale, transfer, use or consumption—the tax was not imposed. Therefore, when the Treasurer replaced the stamps he was not condoning a tax, as was erroneously held by the lower court in the extract copied from its opinion. It was not until the approval of Act No. 116 of 1943 that the introduction of cigarettes in Puerto Rico again became taxable.

The fact that in the cases cited by the appellant in the lower court in order to show the existence of the administrative practice, the employees of the Treasury Department and

of the Auditor's office had before them the stamps rendered useless by reason of their having been cancelled on articles unfit for sale, transfer, use or consumption, does not bar the application of said administrative practice to the present case, where the stamps could not have been seen by the employees because the same were lost when the boat carrying the shipment was sunk. The appellant conclusively proved that it had bought the stamps from the Stamp Agent in New York, that they had been affixed to the packages and that the latter had been shipped on the Bárbara and that the boat had been sunk. The main point was to prove that the stamps had been lost or damaged before the article was subject to the tax, and that circumstance was proved by the evidence which the appellant adduced at the request of the Department, which evidence has not been controverted in any way by the appellee.

The duty on the part of the Treasurer to refund the stamps was not discretionary. The rule established showed that once certain facts were proved, that is, those required by the Department from the appellant, the Treasurer was bound to replace the stamps. The Treasurer could have exercised his discretion in determining whether or not the stamps had been really lost or destroyed, but once this fact was admitted, his discretion ceased and he was bound to do his ministerial duty and comply with the practice which he himself had established and which was sanctioned by § 94 of the Internal Revenue Law. *Ibañez* v. *Swope, Governor*, 58 P.R.R. 21; *Miguel* v. *McCarl*, 291 U.S. 442, and *Roberts, Treas.*, v. *United States*, 176 U.S. 221. The case of *Montgomery Ward and Company, etc.* v. *United States* (1941), 94 C. Cls. 309, on which the lower court lays great stress to maintain that mandamus does not lie, is not applicable herein simply because in that case there was involved the construction of a statute which authorized the General Postmaster of the United States to replace, in his discretion, the

value of the stamps which had been affixed on any mail matter on which no service had been rendered or where excessive postage had been paid. But as we have noted, whereas in the instant case the loss of the stamps is proved as having occurred before the merchandise is introduced into Puerto Rico, and therefore, before the same is subject to taxation, the Treasurer is bound to comply with his ministerial duty to replace the stamps.

█ The fact that in the present case the appellant had obtained from the insurance company the value of the lost stamps does not operate as a bar to the institution and prosecution of this suit, inasmuch as in instituting the same the appellant acts in behalf and in representation of the insurance company. *Luckenbach* v. *McCahan Sugar Co.*, 248 U. S. 139, and Annotation in 96 A.L.R. 864.

█ Lastly, the contention of the Treasurer to the effect that the Auditor of Puerto Rico was a necessary party in this action was correctly dismissed by the court *a quo*, relying on the ruling in *Laborde* v. *Municipality of Isabela*, 38 P.R.R. 58, and *Pérez Soto* v. *District Court*, 38 P.R.R. 71. We may further add, as is alleged by the appellant, that there does not exist any legal provision which imposes on the Auditor the ministerial duty of intervening in these cases. The intervention of the Auditor in connection with the administrative practice was at the request of the Treasurer, in sending an employee of his Department to witness the destruction of the stamps.

For the reasons stated the judgment appealed from must be reversed and another rendered instead granting the mandamus petition and ordering the clerk of this court to issue a writ of mandamus addressed to the defendant directing him to immediately refund to the appellant internal revenue stamps for cigarettes, as follows: 809,500 eight-cent stamps and 175,000 four-cent stamps.