John R. CAOLA et al.

v.

UNITED STATES of America et al.

Civ. No. H–75–110.

United States District Court,
D. Connecticut.

Dec. 4, 1975.

------

L. Patrick Gray, III, James F. Brennan, Jr., Thomas B. Wilson, Groton, Conn., for plaintiffs.

Peter C. Dorsey, U. S. Atty., Marjorie Wilhelm, Asst. U. S. Atty., Hartford, Conn., Lt. Richard Stearns, Office of Judge Advocate General, Dept. of the Navy, Washington, D. C., for defendants.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

These actions by 159 plaintiffs, all enlisted men in the United States Navy, have been consolidated. The plaintiffs seek habeas corpus relief or, in the alternative, money damages under the Tucker Act, 28 U.S.C. § 1346(a)(2), for the alleged breach of military enlistment contracts entered into by each of them. The defendants are the United States, the Secretary of Defense,[1] the Secretary of the Navy, and Vice Admiral Watkins, U. S. Navy, the Chief of Navy Personnel.

Each of the plaintiffs, between 1970 and 1973, enlisted for a period of four years of active duty in the United States Navy by signing a similarly worded enlistment contract. Either concurrently with the signing of their respective enlistment contracts, or shortly thereafter,[2] each plaintiff signed a U. S. Navy form entitled: "AGREEMENT TO EXTEND ENLISTMENT, NAVPERS, 601–1A/NAVCOMPT 513 (Rev. 6–63)," obligating himself for an over-all period of six years of active naval service. The relevant language of the "AGREEMENT TO EXTEND ENLISTMENT" is set forth in the margin.[3] In return for extending their enlistment, these plaintiffs were to receive training in a designated military specialty 1304.10 WB, a "critical skill," and to obtain accelerated advancement and promotion. At the time each plaintiff agreed to extend his enlistment for an additional 24 months there was in effect a federal statute (37 U.S.C. § 308 [1965]), permitting payment of a Regular Reenlistment Bonus and also a Variable Reenlistment Bonus (V.R.B.) to those members of the armed services who reenlisted for an additional two years. The V.R.B. was designed to assist in obtaining and maintaining an adequate career-manning level in designated specialties,[4] and could be paid in an amount

1. James Schlesinger has resigned as Secretary of Defense. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, his successor, Donald Rumsfeld, is automatically substituted as a defendant.

2. While in recruit training, or at a Class A U. S. Navy service school.

3. The agreement reads:
"I * * *, in consideration of the pay, allowances, and benefits which will accrue to me during the continuances of my service, voluntarily agree to extend my enlistment as authorized by Section 509, of Title 10, United States Code, and the regulations issued pursuant thereto. I voluntarily agree to extend my enlistment for a period of 24 months from the date of expiration thereof, subject to the provisions and obligations of my said contract of enlistment of which this, my voluntary agreement, shall form a part. 'REASON FOR EXTENSION: Training (Nuclear Field Program or Advanced Electronics (AEF) Field Program). AUTH: BUPERSMAN 1050300. I understand that this extension becomes binding upon execution and thereafter may not be canceled except as set forth in BUPERSMAN 1050150." [sic]

4. Dept. of Defense Directive 1304.10 Aug. 15, 1968. Navy policy was set forth in BUPERS (Bureau of Personnel) Instruction 1133.18E, March 23, 1972.

up to four times the regular reenlistment bonus.[5] None of the enlistment or reenlistment documents contains any reference to a V.R.B.

By 1974 the Secretary of Defense and the several service secretaries had agreed that a reenlistment bonus was no longer needed as an incentive to maintain desired manpower levels, except in "critical skill" categories.[6] They so informed the Armed Services Committees of both Houses. As a result, Congress enacted, and the President signed, Public Law 93–277 ·(May 10, 1974). The new law eliminated both the regular reenlistment bonus and the V.R.B., theretofore provided for under § 308(a) and (g) respectively, and substituted a new Selective Reenlistment Bonus (S.R.B.) for the V.R.B. for those with critical skills who would reenlist for an additional four-year term.[7]

Each of the plaintiffs has received the promised schooling and obtained accelerated advancement to the rank of petty officer. Each now possesses a designated "critical skill." Yet, none of them have received the bonuses provided for by 37 U.S.C. § 308(g). The defendants argue that because none ⌐ the plaintiffs had entered into his extended enlistment period before § 308(a) and (g) were superseded by P.L. 93–277, the Navy is under no legal obligation to pay the. bonuses. The plaintiffs, on the other hand, claim that they should either be paid those bonuses or be released from further service now or upon the expiration of their original enlistment period.

There are no disputed issues of material fact, and both parties have moved for summary judgment.

### I.

### *Jurisdiction*

This action is brought under the fifth amendment to the Constitution of the United States; 28 U.S.C. § 2241; 28 U.S.C. § 1346(a)(2); 28 U.S.C. § 1361; 28 U.S.C. § 2201; and 28 U.S.C. § 2202.

### II.

### *The Contract*

■ The first issue presented is whether the "AGREEMENT TO EX-

---

"5. Policy. The general concept and intent of the VRB is to provide a flexible, additional pay incentive to alleviate significant shortages of career petty officers in designated ratings and NECs [Navy Enlisted Classification] by obtaining additional first-term reenlistments.

a. The Variable Reenlistment Bonus, because of its superior effectiveness as a first-term reenlistment incentive, will be used as the principal method of attaining an adequate Career Manning Level in presently undermanned ratings and NECs. The major source of additional career personnel is the additional first-term reenlistments that can be obtained by the award of extra pay in the form of VRB.

b. It is the intent of the Chief of Naval Personnel that, in utilizing the Variable Reenlistment Bonus as a first-term reenlistment incentive, continued and increasing attention be given to quality performance in those who are reenlisted. Strict adherence to the Reenlistment Eligibility Criteria in reference (d) is required if the professional quality of the career force is to be improved." ·

5. Amounts of the V.R.B. varied according to the particular skills involved, based upon what men with those skills could be expected to earn in private industry. The Navy Department classified the skills and assigned bonus amounts to each classification according to the shortages of career manpower. *See* BUPERS 1133.18E.

6. *See* 2 U.S.Code Cong. & Admin.News 1974, at ·2985–86.

7. "Objective. The Selective Reenlistment Bonus is a retention incentive paid to enlisted members serving in certain selected ratings who reenlist or extend their enlistments for a period of at least three years. The objective of the bonus is to increase the number of reenlistments in those·ratings characterized by retention levels insufficient to adequately man the career force. Because of its superior effectiveness as a retention incentive, the Selective Reenlistment Bonus will be used as the principal monetary incentive for attaining adequate Navy career manning."
Exh. K, BUPERS memo from SECNAV to ALNAV, May 31, 1974.

TEND ENLISTMENT" was a contract. While the plaintiffs expressly disclaim that any misrepresentations were made to them, they do contend that the central undertaking of the Navy was to induce them to learn critical military skills, and to extend their periods of enlistment. The BUPERS, which, as regulations having the force of law, are binding on all Naval personnel, *Rehart v. Clark,* 448 F.2d 170, 173 (9th Cir. 1971), fully support that contention. Department of Defense Instruction No. 1304.15 (Sept. 3, 1970) describes the Administration of Variable Reenlistment Bonus and Proficiency Pay Programs.[8]

The Navy's contention is that its BUPERS "eligibility" criteria cannot be construed as an express promise, and that the "extension agreement" proffered to the plaintiffs was therefore nothing more than an offer. It argues that this offer could be revoked at any time until the act constituting performance, *i. e.,* commencement of service in the reenlistment period, was completed. However, Professor Corbin and the Restatement of Contracts do not share that view of a unilateral contract.[9]

■ But it is not necessary to decide this case on a unilateral contract theory. Here there is more than a mere begin-

---

8. The portions relevant to this case are found under "V. *Criteria*":

"B. *Individual Eligibility for Receipt of Awards*

1. *Variable Reenlistment Bonus*. An enlisted member is eligible to receive a Variable Reenlistment Bonus if he meets all the following conditions:

a. Is qualified and serving on active duty in a military specialty designated under provisions of paragraph V.A.2. above for award of the Variable Reenlistment Bonus. Members paid a Variable Reenlistment Bonus shall continue to serve in the military specialty which qualified them for the bonus unless the Secretary of a Military Department determines that a waiver of this restriction is necessary in the interest of the Military Service concerned.

b. Has completed at least 21 months of continuous active service other than active duty for training immediately prior to discharge, release from active duty, or extension of enlistment.

c. Is serving in pay grade E–3 or higher.

d. Reenlists in a regular component of the Military Service concerned within three (3) months (or within a lesser period if so prescribed by the Secretary of the Military Department concerned) after the date of his discharge or release from compulsory or voluntary active duty (other than for training), or extends his enlistment, so that the reenlistment or enlistment as extended provides a total period of continuous active service of not less than sixty-nine (69) months.

(1) The reenlistment or extension of enlistment must be a first reenlistment or extension for which a reenlistment bonus is payable.

(2) No reenlistment or extension accomplished for any purpose other than continued active service in the designated military specialty shall qualify a member for receipt of the Variable Reenlistment Bonus.

(3) Continued active service in a designated military specialty shall include normal skill progression as defined in the respective Military Service classification manuals.

e. Has not more than eight years of total active service at the time of reenlistment or extension of enlistment."

9. *See Miller v. Dictaphone Corp.,* 334 F.Supp. 840, 842 (D.Ore.1971).

The Restatement, Contracts (2d) § 45 (Tentative Draft No. 1, 1964) adopts the view that the offer becomes irrevocabe once the offeree begins to perform. Section 45 reads:

"(1) Where an offer invites an offeree to accept by rendering performance and does not invite a promissory acceptance, an option contract is created when the offeree begins the invited performance or tenders part of it.

(2) The offeror's duty of performance under any option contract so created is conditional on completion or tender of the invited performance in accordance with the terms of the offer."

Corbin explains that:

"[T]he employer's offered promise becomes irrevocable by him as soon as the employee has rendered any substantial service in the process of accepting, and this is true in spite of the fact that the employee may be privileged to quit service at any time." 1A Corbin, *Contracts* § 153, at 19–20 (1963).

At least those plaintiffs who have already entered into their extended enlistment period would certainly appear to have "begun performance" and "rendered service" so as to benefit from the above-quoted principles. *See also Sylvestre v. State,* 298 Minn. 142, 214 N.W.2d 658, 667 (1973).

ning of performance by the offeree. At the time of its offer, the Navy asked each plaintiff for a promise to extend the period of enlistment for an additional 24 months. The plaintiffs gave it. Thus, a bilateral contract was made when the agreements to extend enlistments were signed. This view of these agreements is supported by the Navy's refusal to permit the plaintiffs to cancel them.[10] Other cases, indistinguishable from this one, have also found that a bilateral contract was made, between the Navy and each plaintiff, when the "AGREEMENT TO EXTEND ENLISTMENT" was signed.[11] Since I regard those cases as sound precedent, I follow them.

■■ Where, as here, a contract is made between an individual and the government, the law in effect at the time the agreement is entered into becomes part of the contract. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Accordingly, as held in *Collins*, ". . . although 37 U.S.C. § 308 (1968) was not specifically referred to in the extension agreement form it was part of that agreement by operation of law." Since

§ 308, entitled *"Special Pay: reenlistment bonus"* falls within the meaning of "pay" as defined in 37 U.S.C. § 101 (21),[12] the bonuses in § 308 were included as part of the "pay" bargained for in the "AGREEMENT TO EXTEND ENLISTMENT." As noted in *Collins*, the government could have drafted an exclusion for the V.R.B. had it intended that it not be included. Since this had not been done, the court held that the contract should be construed against the party which drafted it, in this case the government. I agree, and hold that the Navy is contractually bound to pay the V.R.B. to each plaintiff.

### III.

#### *Power of Congress*

The government contends that even if the Navy became contractually obligated to pay the V.R.B. to the plaintiffs, that obligation cannot be enforced. Their claim is that Congress was exercising its plenary power to set and alter military pay when it enacted P.L. 93–277. This occurred after the plaintiffs executed their "AGREEMENTS TO EXTEND ENLISTMENT," but before

---

10. The problem presented by these cases was foreseen, as is clearly indicated by the legislative history of P.L. 93–277. It is there recorded that:

    "[t]here was brought to the attention of the conferees a problem that would exist, particularly in the Navy nuclear-power field, under the House interpretation of the language of the bill. In cases where *commitment*[*] *has been made to a man with a four-year enlistment and a two-year extension* that he can cancel the two-year extension and reenlist for four years and receive a reenlistment bonus for the four-year reenlistment. [*sic*] The Navy expressed great concern that the language of the bill might be interpreted to require it to abrogate *an understanding it had with enlistees* and would operate in such a way as to cause serious retention problems in its most critical career field."
    *See* 2 U.S.Code Cong. & Admin.News 1974, at 3000 (emphasis added).
    * "Commitment" is another term for a binding contract. *See e. g., Ivor B. Clark Co. of*

*Texas, Inc. v. Southern B. & I. D. Co.,* 399 F.Supp. 824 (S.D.Miss.1974).

11. *See Adams v. United States*, F.Supp. Civ.No. CV74–1585–ALS (C.D.Cal. Sept. 16, 1975); *Aikin v. United States*, F.Supp. Civ.No. 75–0062–N. (S.D.Cal. Aug. 26, 1975); *Collins v. Schlesinger*, F.Supp., Civ. No. 75–0053 (D.Ha. May 29, 1975); *Carini v. United States*, F.Supp.Civ. No. 74–88–NN (E.D.Va. Jan. 17, 1975), *appeal docketed,* Nos. 75–1399, 75–1400, 4th Cir. April 22, 1975.* *See also Larionoff v. United States,* 365 F.Supp. 140, 145 (D.D.C.1973).
    * This decision was reversed between my ruling and the time of publication *Carini v. United States,* 528 F.2d 738 (4th Cir., 1975).

12. Section 101(21) sets out the following definition: "'pay' includes basic pay, special pay, retainer pay, incentive pay, retired pay, and equivalent pay, but does not include allowances . . . ." The V.R.B. was a form of incentive pay. *See* note 4, *supra*.

their extended periods began to run. Under that act the V.R.B. was superseded by a new reenlistment incentive, the Selective Reenlistment Bonus.[13]

■ Although Congress can change the law governing any sort of contract, it can do so only to protect the welfare of its citizens. *Cf. Home Bldg. & L. Ass'n v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934).

> "The question is not whether the legislative action affects contracts incidentally, or directly or indirectly, but whether the legislation is addressed to a legitimate end . . . .
>
> ". . . This principle precludes a construction that would permit the state to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them."[14]

And it is well established that "[t]o abrogate contracts, in the attempt to lessen government expenditures, would be not the practice of economy, but an act of repudiation." *Lynch v. United States*, 292 U.S. 571, 580, 54 S.Ct. 840, 844, 78 L.Ed 1434 (1934).

■ The legislative history of P.L. 93–277 makes it unmistakably clear that the major reason for changing from the V.R.B. to the S.R.B. was to save some money by restricting the bonus program

in effect under § 308(g). *See* 2 U.S. Code Cong. & Admin.News 1974, at 2984–3000. There is not the slightest indication that the new law had any relationship to the health or welfare of either the men in the service or the public at large. Therefore it is not necessary to investigate the extent of Congress' power to abrogate contracts under its War Powers. I am in agreement with the rulings on this point in *Carini* and *Collins*.[15] Congress did not have the power to abrogate or alter the existing contracts between the plaintiffs and the Navy merely for the purpose of cutting government expenditures. It is clear that in revoking the V.R.B. Congress was acting only to achieve economy, and not in consideration of its War Powers. Thus, the contracts are enforceable.

The plaintiffs' motion for summary judgment is granted. The defendants' motion for summary judgment is denied.

### Relief

#### A. Habeas Corpus

■ The claim for habeas relief was not only inappropriate at the outset,[16] but, having been presented only as an alternative to relief by way of monetary damages, is now moot. The petitions for writs of habeas corpus are denied.

13. The new law contains a "saved pay feature," preserving the expected $2,000 reenlistment entitlement for those on active duty. P.L. 93–277, Sec. 3. 1 U.S.Code Cong. & Admin.News 1974, at 133. *See also* 2 U.S.Code Cong. & Admin.News 1974, at 2987. Congress' specific decision to preserve the regular reenlistment bonus for those then on active duty emphasizes its intention to terminate payments of the V.R.B. This decision forces me to confront the constitutionality of Congress' action.

14. 290 U.S. at 438–39, 54 S.Ct. at 240. This case involved the federal constitutional prohibition against a state's passing a law impairing the obligation of contracts. Article I, section 10. Although the federal government is not restricted by the express language of that clause, its limitations on governmental powers have been read into the fifth amend-

ment's prohibition against takings of property without just compensation.

> "The United States cannot any more than a State interfere with private rights, except for legitimate governmental purposes. . . . The United States are as much bound by their contracts as are individuals. If they repudiate their obligations, it is as much repudiation, with all the wrong and reproach that term implies, as it would be if the repudiator had been a State or a municipality or a citizen."

*Sinking Fund Cases*, 99 U.S. 700, 718–19, 25 L.Ed. 496 (1878).

15. Cited at note 11 *supra*.

16. *Carini*, cited at note 11 *supra*. *Cf. Bell v. United States*, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961).

**1108**

### B. *Money Damages*

■ One hundred thirty-two of the plaintiffs have completed their original four-year enlistments and have commenced service under their reenlistments. Each one is now entitled to receive the V.R.B. which is applicable to him.

### C. *Declaratory Relief*

■ Twenty-seven plaintiffs are still serving their four-year enlistments and have not yet begun to serve in the reenlistment period. They will be entitled to a V.R.B. as soon as they begin to serve the extended period of enlistment, and appropriate declaratory relief shall be entered.

### D. *Interest*

■ The prayer for relief requests that any award to each plaintiff include interest at the rate of seven per cent from the date on which the complaint was filed, or on which each plaintiff's entitlement to the V.R.B. occurred. However, interest may be awarded against the United States only as is provided by statute. The Tucker Act, 28 U.S.C. § 2411(b), provides that "on all final judgments rendered against the United States in actions instituted under section 1346 of this title, interest shall be computed at the rate of 4 percentum per annum from the date of the judgment . . . ." Interest is awarded to each plaintiff in accord with section 2411.

### E. *Mandamus*

■ For all of the plaintiffs the multiple to be used in computing their V.R.B. shall be the last effective V.R.B. multiple assigned to their respective designated career specialities prior to June 1, 1974. *See* BUPERS 1304.10. The computations which must be made in each case may require some administrative competence, but they do not call for the exercise of judgment or discretion. Since in this case the duty to pay is imposed by law, as determined above, a court may order such payments to be made notwithstanding the prior contrary decision of the Secretary of the Navy. *See Miguel v. McCarl,* 291 U.S. 442, 54 S.Ct. 465, 78 L.Ed. 901 (1934).

Accordingly, an injunction will issue requiring the Secretary of the Navy to rescind any instructions which have the effect of denying the V.R.B. to any of the plaintiffs in this case. The injunction will also require the Secretary to compute the V.R.B.s to which each plaintiff is entitled, in the manner set forth under the heading *Relief* in this opinion. All V.R.B.s as so determined with interest thereon at the rate of four per cent per annum, shall be paid by draft or other negotiable instrument of the United States of America made payable to each plaintiff and his attorney of record in this case.

This injunction may be modified by this court for good cause shown by any party to this suit.

The plaintiffs are entitled to receive their costs.

So ordered.