**ROARING SPRINGS ASSOCIATES, a co-partnership, Plaintiff,**

v.

**Cecil D. ANDRUS, Secretary of Interior, Curt Berklund, Bureau of Land Management, Director, Murl W. Storms, Bureau of Land Management, Oregon State Director, L. Christian Vosler, Bureau of Land Management, Burns District Manager, Defendants.**

**Civ. No. 77–330.**

United States District Court, D. Oregon.

Aug. 14, 1978.

William F. Schroeder, Vale, Or., for plaintiff.

Thomas C. Lee, Asst. U. S. Atty., Portland, Or., for defendants.

## ORDER

JAMES M. BURNS, District Judge.

I have carefully considered the arguments raised in defendants' Objections to the Findings and Recommendation of the Magistrate. In addition, I had the benefit of oral argument conducted on a conference call basis. At the close of that call, I indicated to counsel I would affirm the Magistrate, for reasons stated at that time. I remain persuaded that those Findings and Recommendation speak clearly and correctly to the issues posed by the briefs for summary judgment. They merit publication as the opinion of the judges for the District of Oregon on the proper interpretation of 16 U.S.C. § 1334, at least in this context.

Mandamus is available. Even if geography and the habit of these wild free-roaming horses dictate that the Secretary of the Interior must go back again to retrieve the animals, that is nevertheless his duty prescribed by the statute. Funds are currently available to carry out the removal. I express no opinion as to the law's requirement if and when these funds run out. The defense of sovereign immunity is unavailable insofar as it is asserted by the United States at this point.

Accordingly, IT IS ORDERED that defendants' motion for summary judgment is denied and plaintiff's motion for summary judgment is granted. Entry of judgment will await the preparation of an appropriate order, first to be prepared by plaintiff's counsel, then reviewed by defendants, and if the parties cannot agree, I will arrange for another hearing or conference call.

FINDINGS AND RECOMMENDATION

GEORGE E. JUBA, United States Magistrate.

Plaintiff owns land in eastern Oregon. The land is unfenced. It is adjacent to land owned by the federal government. Free roaming horses have moved off the federally owned land onto plaintiff's land. Plaintiff has informed the nearest federal marshal and agent of the Secretary of the Interior of the situation and asked that the horses be removed. They have refused to remove the horses. Plaintiff has brought a mandamus action seeking an order compelling the defendants, who are the Secretary of the Interior and three of his agents, to remove the horses from its land. All parties have moved for summary judgment.

■ Plaintiff has brought this mandamus action pursuant to 28 U.S.C. § 1361. That statute reads in pertinent part:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

Relief is appropriate under § 1361 if 1) it appears that the plaintiff's claim is clear and certain and 2) the duty of the officer is ministerial and so plainly prescribed as to be free from doubt. *Smith v. Grimm,* 534 F.2d 1346, 1352 (9th Cir. 1976); *United States v. Walker,* 409 F.2d 477, 481 (9th Cir. 1969); *Jarrett v. Resor,* 426 F.2d 213, 216 (9th Cir. 1970). The major issues in resolving these motions are 1) do defendants owe a clearly prescribed ministerial duty to plaintiff to remove the horses from plaintiff's land and 2) assuming such a duty is owed, is plaintiff's claim barred nonetheless by the doctrine of sovereign immunity.

*Is there a duty owed?* 16 U.S.C. § 1334 provides in pertinent part:

If wild free-roaming horses or burros stray from public lands onto privately owned land, the owners of such land may inform the nearest Federal marshall or agent of the Secretary, who shall arrange to have the animals removed. . . .

Plaintiff contends that herein lies the duty to remove the horses from its land.

■ Defendants assert that the horses in question have not strayed onto plaintiff's land and, therefore, they owe no duty to plaintiff under the statute. In support of this contention they point to the Oregon estray laws. ORS 607.007(1) provides:

Estray means livestock of any unknown person which is unlawfully running at large or being permitted to do so, or which is found to be trespassing on land enclosed by an adequate fence.

Defendants contend that the horses are not estrays because the land involved is in open range country (in other words, livestock in this region may roam as they please) and plaintiff has no fence erected around its property.

The Wild Horse and Burro Act, 16 U.S.C. § 1331 *et seq.,* of which 16 U.S.C. § 1334 is a part, contains no definition of "stray". Defendants argument relies on an incorporation of state estray laws into the Act for purposes of defining what is meant by the word "stray" in § 1334.

There is no indication in the legislative history of the Act that Congress intended such an incorporation. Moreover, a reading of § 1334 does not support such an incorporation. First, Congress used the word stray as a verb. The pertinent sentence reads: "If wild free-roaming horses or burros stray from public lands onto privately owned land . . . ." The verb stray describes the movement of wild horses from public to private lands. Had the statute used the word stray as a noun, e. g., wild horses who are strays, an incorporation theory would look more viable, for then it would be necessary to define what are strays.

There is also no reason to believe that Congress intended that the treatment of wild horses would vary from state to state, depending on the state estray laws. First, this might head the Act into unnecessary equal protection problems. Second, the Act was primarily intended to protect wild horses and burros and keep them on public lands as a symbol of our national heritage.

Since the Act expresses national policy, there is no reason to believe that its enforcement was to vary from state to state.

■ The defendants next contention is that the Secretary of the Interior has promulgated a regulation, 43 CFR § 4750.3, pursuant to § 1334 which undermines plaintiff's assertion that the Secretary has a duty to remove the wild horses from plaintiff's land. The regulation reads as follows:

The authorized officer shall remove, as soon as he can make the necessary arrangements, wild free-roaming horses and burros, from private land at the request of the landowner where the private land is enclosed in a "legal fence" . .
In "no fence districts" or other areas where the private landowner is not required by State statute to fence the private land to protect it from trespass by domestic livestock, the authorized officer shall, as soon as he can make the necessary arrangements, remove wild free-roaming horses or burros from such private land at the request of the landowner.

According to defendants this regulation imposes a duty on the Secretary to remove wild horses from private lands enclosed by a legal fence or from private lands which are unfenced if such lands are in a fence-in area (an area where livestock owners have a duty to fence their livestock in and a private landowner is not required to fence his land in to protect it from trespassing livestock). Defendants, however, insist that they have no duty to remove wild horses where the landowner has not fenced his property, but, under state law, must do so to protect it from trespassing livestock. In other words, defendants contend that in a fence-out or open range area (one where a landowner must fence out trespassing livestock) they must only remove wild horses if the landowner has erected a fence. In the present case the land is in an open range area and the plaintiff has not erected a fence.

I agree with defendants reading of the regulation. The question then is whether the regulation conflicts with the statute. If the regulation is inconsistent with the statute, the regulation must be rejected. It is the courts who finally decide questions of statutory construction and not the administrative agencies. *Patagonia v. Board of Gov. of Fed. Res. Sys.*, 517 F.2d 803, 812 (9th Cir. 1975).

I find the regulation to be inconsistent with the statute. The statute imposes a duty on the Secretary to remove wild horses and burros from private land upon notice from private landowners. It does not qualify private landowners or their land in any way. The duty extends to all private landowners who have wild horses and burros stray upon their land. The regulation puts qualifications on this duty, in effect saying that it only extends to certain landowners. I find this to be an inconsistency.

Moreover, if the regulation was valid it would allow the states to remove most, if not all, of the protection which § 1334 offers. The states might declare that all lands are in an open range. If so, the government would only be obligated to remove wild horses and burros that invaded fenced land. In an area such as eastern Oregon where few landowners fence their land, wild horses and burros could disappear from the public lands. This illustrates how the acceptance of defendants' argument would render the protection afforded to wild horses and burros under the Act a subject of state law and contravene the policy and purpose of the Act.

■ Defendants contend that the Act was meant to protect wild horses and burros and not to protect private landowners. They, therefore, assert that they have no duty to plaintiff, a private landowner, under the Act. While the Act is primarily intended to protect the animals, the statute places a duty on the government to remove the animals from private lands. The removal of the animals is primarily for the benefit of the public in that it keeps wild horses and burros on public lands. As a byproduct, the landowner has the benefit of having the animals removed from his land without cost and by merely reporting to the government that they are on his land. This

byproduct also works to the benefit of the public. Because the landowner has an easy and cost-free way to remove the animals, he will not be tempted to shoot or otherwise harm them. Accordingly, less animals will be maimed or killed. Thus, the purpose of the removal statute is in keeping with the general purpose of the Act. I find that the government owes a duty to the private landowner which accrues to the benefit of the public.

■ Defendants next contend that the ways in which the Secretary protects these animals lies within his discretion. Therefore, they assert that mandamus is not available to plaintiff. Defendants cite cases holding that mandamus cannot be used to dictate how an act of discretion shall be exercised. However, the way I read the statute, the Secretary has a ministerial duty to remove the wild horses and burros from private lands. As to the duty of removal, the statute does not speak in discretionary terms. As to other means of preservation and protection, the Secretary does have discretion under the Act.

Accordingly, I find that the defendants do owe plaintiff the duty to remove the wild horses from its land.[1]

■ *Is plaintiff's claim barred by the doctrine of sovereign immunity?* Under the doctrine of sovereign immunity mandamus relief that would expend itself on the public treasury is barred, unless the federal official being sued is alleged and found to have acted beyond the scope of his statutory authority or unconstitutionally. *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). Defendants contend that the Secretary does not have sufficient available funds to carry out all of the programs suggested by the Wild Horse and Burro Act for the preservation of wild horses and burros. They argue that if the court were to order that defendants remove the horses from plaintiff's land, it would in effect be ordering that monies be taken from the public treasury. Defendants insist that plaintiff's claim is therefore barred, because under the doctrine of sovereign immunity the requested relief must not be granted.

■ The problem is slightly different than defendants pose it. In the current fiscal year Congress had appropriated "$3,077,000 for the Wild Horse and Burro Management program of which Oregon received $745,000." Affidavit of W. R. Millhollen, Jr., P. 3. Defendants have access to this source of funds and may use it to remove the horses from plaintiff's land. They simply have chosen to use the funds to administer wild horse and burro management programs other than removal from private lands. E. g. reduction of herd sizes.

An order requiring defendants to remove the horses from plaintiff's land would not expend itself on the public treasury.[2] Defendants would merely be forced to spend some of the funds available to them for this task. This seems entirely appropriate in light of my previous finding that the Secretary has a ministerial duty to remove wild

---

1. Defendants cite many cases that stand for the proposition that mandamus will not issue if the plaintiff has alternative remedies available. E. g., *Cartier v. Secretary of State,* 165 U.S.App. D.C. 130, 506 F.2d 191 (1974). Defendants contend that plaintiff has an alternative remedy available in that the Secretary will undertake in the future to reduce the herd size of wild horses and burros which will prevent such animals from straying onto plaintiff's land. Therefore, defendants contend that plaintiff is not entitled to mandamus relief. The problem with this argument is that the fact that the Secretary will voluntarily reduce herd sizes in the future is no remedy for plaintiff's current ill: the wild horses that are now on its land. Such a procedure looks like a preventative, but not like a remedy. Even if it were found to be a remedy, it does

not look like an alternative remedy, since it is a *voluntary* option the Secretary may choose to undertake in the *future,* but is not mandatory or immediate.

2. In this case the defendants do not contend that they have no money or insufficient money available to remove the horses from plaintiff's land. Obviously if that was the situation a different consideration would be before the court: Does the doctrine of sovereign immunity bar mandamus relief when the officials being sued do not have access to sufficient monetary resources to carry out the court's order? It appears that in such a case mandamus would expend itself on the public treasury.

horses and burros from private lands as opposed to a discretionary duty to preserve and protect these animals by any available means. Therefore, I find that the doctrine of sovereign immunity will not bar plaintiff's claim.

Accordingly, defendants' motion for summary judgment should be denied and plaintiff's motion for summary judgment should be granted.