UNITED STATES of America, Plaintiff,

v.

Wayne CHRISTIANSEN and Blaine Johnson, Defendants.

No. CR–R–80–41–ECR.

United States District Court, D. Nevada.

Dec. 2, 1980.

Edward R. J. Kane, Asst. U. S. Atty., Reno, Nev., for plaintiff.

Martin Wiener, Asst. Fed. Public Defender, Reno, Nev., for Wayne Christiansen.

David R. Gamble, Carson City, Nev., for Blaine Johnson.

## ORDER

EDWARD C. REED, Jr., District Judge.

The defendants have been charged, in a seven count indictment, with willfully removing wild free-roaming horses from public lands (16 U.S.C. § 1338(a)(1)) and with maliciously causing the death of a wild free-roaming horse (16 U.S.C. § 1338(a)(3)), in violation of the Wild Free-Roaming Horses and Burros Act, 16 U.S.C. §§ 1331 et seq. They have moved to dismiss the indictment on the ground that certain sections of the Act are unconstitutionally vague and overbroad. A hearing on the motion was held on December 1, 1980, with Assistant U. S. Attorney Edward R. J. Kane representing the plaintiff, David R. Gamble, Esq., representing defendant Johnson, and Assistant Federal Public Defender Martin H. Wiener representing defendant Christiansen.

The U. S. Supreme Court has declared the Wild Free-Roaming Horses and Burros Act to be a constitutional exercise of congressional power under the Property Clause of the U.S. Constitution, Art. IV, § 3, cl. 2, but declined to determine to what extent Congress might protect wild free-roaming animals on private lands. *Kleppe v. New Mexico*, 426 U.S. 529, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976). The defendants contend that the horses here involved were gathered up on their own private land.

█ The test of vagueness is whether the statutory language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. *Jordan v. DeGeorge*, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951). A statute which forbids the doing of an act in terms so vague that men

of common intelligence must necessarily guess at its meaning and differ as to its application, violates due process. *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). It is the statute, not the indictment under it, that prescribes the rule to govern conduct; no one may be required at peril of liberty or property to speculate as to the meaning of a penal statute. *Id.*

■ The criminal provision of the Act which the defendants attack is found in 16 U.S.C. § 1338, and reads, in pertinent part:

"(a) Any person who—

(1) willfully removes or attempts to remove a wild free-roaming horse or burro from the public lands, without authority from the Secretary, ... shall be subject to a fine ... or imprisonment ... or both ...."

16 U.S.C. § 1332(b) provides the definition that " 'wild free-roaming horses and burros' means all unbranded and unclaimed horses and burros on public lands of the United States." The defendants argue that in order to determine whether a horse is unbranded, it is necessary to capture the animal; such capture, they say, may be forbidden by the Act. However, the statute does not preclude the temporary immobilization of an animal to determine whether it is branded. Both the statute and the indictment charge the willful removal of the horses from public lands.

Also, the defendants contend that there is no requirement under either federal or state law that a horse be branded and, as a matter of fact, that the great majority of horses (both wild free-roaming and domestic) are unbranded. While this is generally true (cf. 7 U.S.C. § 2141), Nevada statute requires every owner of animals in the State who permits his animals to graze upon the open range to brand those animals. NRS 564.025. Further, the statutory definition of "wild free-roaming horses and burros," quoted above, requires that a horse be both unbranded *and* unclaimed for its removal from public land to constitute a crime.

■ The absence of a definition for "unclaimed" in the Act makes it unconstitutionally vague, according to the defendants. They point out that a person attempting to remove a horse from public lands must be claiming that horse as his own, thereby removing it from the coverage of the Act. Such an example must be treated as frivolous. However, the defendants also urge that there can be no "unclaimed" horses in Nevada, because all horses running at large in the State are descendants of domestic horses. Therefore, they say, the owners of the ancestors would have a valid claim upon their progeny.

The legislative history of the Act defeats the defendants' position. "Addition of the word 'unclaimed' in the definition of a wild free-roaming horse or burro serves to give recognition to the valid claims of individuals." Senate Rep. No. 92–242, found at 1971 U.S.Code Cong. and Ad. News, pp. 2149, 2151. Thus, the hypothetical situation postulated by the defendants, that the owner of an ancestor horse might claim the progeny, is provided for in the Act. *See, Am. Horse Protection v. U. S. Dept. of Interior*, 551 F.2d 432 (D.C.Cir.1977).

■ 16 U.S.C. § 1335 declares that: "A person claiming ownership of a horse or burro on the public lands shall be entitled to recover it only if recovery is permissible under the branding and estray laws of the State in which the animal is found." The defendants contend that the branding and estray laws of Nevada allow a person seeking his horse at large upon the public lands to capture it and remove it for the purposes of brand inspection or sale or whatever. They allege that any dispute as to ownership must be litigated before the Nevada Department of Agriculture. Thus, they conclude, a person may be acting within his rights under Nevada's branding and estray laws in removing a horse from public lands, and yet be in violation of the criminal provisions of the Wild Free-Roaming Horses and Burros Act.

The validity of the argument really depends upon the sincerity of the defendants' claims of ownership of the horses involved.

Nevada law gives them no help if their ownership claims are sham. NRS 569.005 defines an estray horse as one whose owner is unknown in the section where the animal is found. All estrays are deemed to be the property of the State Department of Agriculture. NRS 569.010. It is unlawful for any person to take up any estray and retain possession of it, except as provided for by State law. NRS 569.040. Any person taking up an estray must provide a written description of the animal to the Department of Agriculture within five days. NRS 569.-050. The Department of Agriculture gives notice and determines any resulting claims of ownership. NRS 569.060 and 569.070. It is larceny for a person to use, or cause to be used, an estray. NRS 569.100. Further, any person who takes up or retains in his possession an estray not his own property, without the owner's consent or other than in accordance with the State statutory procedure, is guilty of a misdemeanor. NRS 569.130. Any person wishing to kill, capture, remove, sell or otherwise dispose of any wild, unbranded horse found running at large on public lands must first make written application for, and obtain a permit, from the appropriate Board of County Commissioners. NRS 569.360 and 569.370. In addition, a procedure is furnished for the owner of private property trespassed upon by livestock to notify the livestocks' owner and recover damages for the trespass. NRS 569.440. Finally, a brand is required of any owner who permits his animals to graze upon open range in Nevada. NRS 564.025. Therefore, if the defendants' claim of ownership of the horses has a substantial basis, and the procedures of State law have been followed, the Act does not make their activities criminal. In any event, if state law conflicts with the Act, the state law must give way. *Kleppe v. New Mexico, supra.*

■ It is also the position of the defendants that the phrase "on the public lands of the United States", found in the definition of "wild free-roaming horses and burros," at 16 U.S.C. § 1332(b), has been extended by regulation to include animals which use public lands only for a portion of their existence. This, they contend, would result in a domestic animal escaping from its corral onto public lands becoming a "wild free-roaming" animal. This does not appear to be accurate. 43 C.F.R. § 4720.1 excludes unbranded horses that have entered public lands by accident or negligence from the categorization of "wild free-roaming" horses. To the same effect is 43 C.F.R. § 4700.-0–5(b).

■ Finally, the defendants argue that 16 U.S.C. § 1332(b) [definition of "wild free-roaming horses"] and the utilization of that term in the criminal provisions of 16 U.S.C. § 1338(a)(1) permit of a violation only when the animal is removed from public lands. Therefore, they urge, a person reasonably could believe that any animal found upon private property may be removed without fear of violating the law. This contention is correct insofar as section 1338(a)(1) is concerned. However, 16 U.S.C. § 1334 provides for wild free-roaming horses or burros that stray from public land onto privately owned land. Upon notification of a federal marshal or agent of the Secretary of Interior or Agriculture, the animals should be removed. *See, Roaring Springs Associates v. Andrus*, 471 F.Supp. 522 (D.Or.1978). Alternatively, the private land owner may maintain such horses or burros on his land, but only in a manner that protects the animals. Here, too, the Secretary's agent must be notified.

The indictment herein charges the defendants with willfully removing the animals from public lands. If the proof develops that such removal was from private land, a question may arise as to whether the evidence establishes the allegations contained in the indictment. This does not support the defendants' position herein, however, that 16 U.S.C. § 1338(a)(1) is unconstitutional by reason of vagueness or overbreadth. Subsection (a)(5) of said statute makes it a crime to sell an animal maintained on private land pursuant to the provisions of section 1334. The defendants are not charged with such a violation. Therefore, the fact must be established that

the removal was from public land for the defendants to be convicted under the indictment against them. Men of reasonable intelligence would so understand the applicable statutes.

■ Even if doubts might arise as to the class of offense at which a statute is directed in marginal cases, where the class can be made constitutionally definite by a reasonable construction of the statute, a court is under a duty to give the statute that construction. *See, United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

IT IS, THEREFORE, HEREBY ORDERED that the defendants' motion to dismiss the indictment against them be, and the same hereby is, DENIED.