Joe B. FALLINI, Jr., Susan L. Fallini, and Helen L. Fallini, individually as well as Executrix of the Estate of Joe B. Fallini, Sr., Deceased, Plaintiffs-Appellees,

v.

Donald P. HODEL, Secretary of the Interior of the United States of America, Robert F. Burford, Director of the Bureau of Land Management, Edward F. Spang, Nevada State Director of the Bureau of Land Management and H. James Fox, Battle Mountain District Manager of the Bureau of Land Management, Defendants-Appellants.

No. 85–1585.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 1985.

Decided Feb. 27, 1986.

**1344**

William F. Schroeder, Vale, Or., for plaintiffs-appellees.

William B. Lazarus, Dept. of Justice, Washington, D.C., for defendants-appellants.

Dan R. Reaser, Dist. Atty. Gen., Carson City, Nev., for amicus State of Nev.

Before SKOPIL, FLETCHER, and WIGGINS, Circuit Judges.

SKOPIL, Circuit Judge:

The Secretary of the Interior and officials of the Bureau of Land Management appeal from the district court's grant of mandamus and a mandatory injunction compelling them to prevent wild, free-roaming horses from straying off public lands onto private lands. Appellees ("Fallini") were granted their requested relief under section 4 of the Wild Free-Roaming Horses and Burros Act ("Act"), 16 U.S.C. §§ 1331–40 (1982). The requested relief was not available under section 4 of the Act. We reverse and remand.

## FACTS AND PROCEEDINGS BELOW

Appellees are private landowners who maintain a ranching operation in Nye County, Nevada. Appellants ("the BLM") are responsible for administering the public lands in Nevada. Fallini owns approximately 1,800 acres of private land in the Reveille Allotment of the Tonopah Resource Area. The allotment contains an additional 657,520 acres of public land. Fallini owns water rights to all known waters within the allotment.

Since Congress passed the Act in 1971, the population of wild horses in the Tonopah Resource Area has steadily increased. Although the Act contemplates that wild horses and burros will be managed on public lands, the animals often stray onto private lands. Because of the growth of the herd and the availability of water on Fallini's land, many wild horses stray onto his land. The horses trample fences, destroy watering tanks and troughs, consume large quantities of water and range forage, and pose a threat to the safety of ranch hands.

On several occasions Fallini requested the BLM to remove wild horses from his property. The BLM failed to respond to the requests. Pursuant to section 4 of the Act, Fallini sought mandamus to compel the BLM to remove wild horses from his land. Fallini also requested the BLM to take "all steps necessary" to prevent wild horses from straying onto his land in the future.

The district court granted Fallini's motion for summary judgment and issued a writ of mandamus compelling the BLM to remove the stray wild horses from Fallini's land. The BLM does not appeal this ruling. The district court also issued a writ of mandamus and continuing mandatory injunction compelling the BLM to take all necessary steps to prevent a recurrence of the straying of wild horses onto Fallini's land. The BLM appeals this ruling.

## DISCUSSION

### A. The Remedy Granted by the District Court.

■ The district court granted Fallini's request for mandamus to compel the BLM to "take all steps necessary to prevent" wild horses from entering his land in the future and, "continually enjoined and restrained [the BLM] from suffering or permitting the presence of wild free-roaming horses and burros to hereafter be upon [Fallini's] lands...." *Fallini v. Watt*, No. LV 81–536 RDF, Writ of Mandamus and Preliminary Injunction (D.Nev. Oct. 3, 1984). The injunction is mandatory in nature. It places an affirmative duty upon

the BLM to keep wild horses off Fallini's land. In effect, the injunction is no different than the mandamus. When the effect of a mandatory injunction is equivalent to the issuance of mandamus it is governed by similar considerations. *Miguel v. McCarl,* 291 U.S. 442, 452, 54 S.Ct. 465, 467, 78 L.Ed. 901 (1934).

■ The federal mandamus statute provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (1982). Mandamus relief is only available to compel an officer of the United States to perform a duty if (1) the plaintiff's claim is clear and certain; (2) the duty of the officer "is ministerial and so plainly prescribed as to be free from doubt," *Tagupa v. East-West Center, Inc.,* 642 F.2d 1127, 1129 (9th Cir. 1981) (quoting *Jarrett v. Resor,* 426 F.2d 213, 216 (9th Cir.1970)); and (3) no other adequate remedy is available. *Piledrivers' Local Union No. 2375 v. Smith,* 695 F.2d 390, 392 (9th Cir.1982).

**B. Standard of Review.**

■ The extraordinary remedy of mandamus traditionally lies within the trial court's discretion. *Hayakawa v. Brown,* 415 U.S. 1304, 1305, 94 S.Ct. 1145, 1145, 39 L.Ed.2d 457 (Douglas, Circuit Justice 1974). A trial court abuses its discretion when its decision is based on clearly erroneous factual findings or an incorrect legal standard. *Securities and Exchange Commission v. Carter Hawley Hale Stores, Inc.,* 760 F.2d 945, 947 (9th Cir.1985).

■ Whether each element of the three-part mandamus test is satisfied is a question of law. We review *de novo. See United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (*en banc*), *cert. denied,* ——— U.S. ———, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Fallini's claim fails the second and third prongs of the mandamus test. The district court therefore erred in granting mandamus and a mandatory injunction.

**1. No Plainly Prescribed Duty**

Section 4 of the Act provides, in pertinent part:

> If wild free-roaming horses or burros stray from public lands onto privately owned land, the *owners of such land may inform the nearest Federal marshal or agent of the Secretary, who shall arrange to have the animals removed.* In no event shall such wild free-roaming horses and burros be destroyed except by agents of the Secretary....

16 U.S.C.A. § 1334 (1985) (emphasis added).

Section 4 is the only provision of the Act that pertains to wild horses straying onto private lands. Under section 4 a landowner may, *inter alia,* notify the BLM when wild horses stray onto his or her land. Upon notification, the BLM has a plainly prescribed, ministerial duty to remove the horses. *Roaring Springs Associates v. Andrus,* 471 F.Supp. 522, 526 (D.Or.1978). Section 4 does not require the BLM to prevent straying in the first instance.

■ Whether the Act impliedly imposes a ministerial duty to prevent wild horses from straying onto private land is a question of first impression. To determine if such a duty exists, we must analyze the language of the entire Act. *See Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974) (when interpreting a statute, court must look not only to one clause, but to the entire Act in order to give effect to the legislative intent). "[T]he fact that a statute requires construction by ... the court in order to determine what duties it creates does not mean that mandamus is not proper to compel the officer to perform the duty, once it is determined." *Knuckles v. Weinberger,* 511 F.2d 1221, 1222 (9th Cir.1975) (citing *Roberts v. United States,* 176 U.S. 221, 231, 20 S.Ct. 376, 379, 44 L.Ed. 443 (1900)). However, where the statute prescribes an exclusive remedy, we should be cautious in extending it. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11,

19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979).

The BLM argues that upon notification it need only remove stray wild horses and burros from private land. It insists its duty is limited to viewing the complainant's land, surveying it for wild horses, and removing the horses. It contends that the district court, in requiring the prevention of wild horses from straying onto private lands, is imposing a duty not contemplated by Congress under section 4 of the Act.

Because of the general duty imposed upon the BLM to manage wild horses and burros on public lands, Fallini contends that requesting removal is not the only remedy. Implied in the general duty is the ministerial duty to keep wild horses off private lands. Because section 4 specifically deals with strays, Fallini insists it is proper to invoke this implied duty.

We accept the BLM's interpretation of its statutory duty. The Act does not charge the BLM with the duty to "prevent" wild horses from straying. We are unable to imply such a duty. Although the BLM is charged with broad duties in managing the animals on public lands, see 16 U.S.C. §§ 1331, 1333, the Act fails to charge the BLM with a duty to prevent straying that is "so plainly prescribed as to be free from doubt." See Tagupa, 642 F.2d at 1129.

Section 4 of the Act clearly contemplates the possibility that wild horses may stray onto private lands. The legislative history of the Act indicates that Congress was aware of this possibility. Congress declined to authorize the BLM to fence the wild horses or to use intensive management techniques. The Senate Report discussing the Act states: "The Committee wishes to emphasize that the management of the wild free-roaming horses and burros be kept to a minimum ... to deter the possibility of 'zoolike' developments." S.Rep. No. 92–242, 97th Cong., 1st Sess., reprinted in 1971 U.S.Code Cong. & Ad. News 2149, 2151–52.

The floor debates fail to support a finding of an implied duty to prevent straying. Repeated emphasis is placed upon a desire not to rely on fenced ranges and to keep management at a minimum. See, e.g., 117 Cong.Rec. 22,669–672, 34,771–775 (1971). The conference committee assigned to reconcile differences between the original Senate Bill and the House Amendment states: "Reliance on ranges, and particularly fenced ranges, would defeat the purpose of the legislation.... The principal goal of this legislation is to provide for the protection of the animals from death and harassment...." Conf.Rep. No. 92–681, 97th Cong., 1st Sess., reprinted in 1971 U.S. Code Cong. & Ad.News 2149, 2159. Prevention of straying is subservient to the fundamental goal of protecting the animals with minimal management effort.

 Even assuming the BLM has a general duty under section 4 to manage wild horses solely on public lands, we cannot imply a duty to prevent straying of wild horses onto private lands. We fail to find any suggestion by Congress or otherwise that the BLM had a duty, ministerial or prescribed, to prevent straying of wild horses onto private land.

2. The Remedy Under the Act is Adequate

 The district court found that mandamus and mandatory injunction were the only remedies available to adequately protect Fallini from harm caused by straying wild horses. The district court relied on uncontroverted evidence that the BLM delayed for three and five months in responding to two prior requests to have wild horses removed from Fallini's land. We reverse the grant of these remedies because the remedy prescribed by section 4 of the Act provides adequate relief.

The BLM has a plainly prescribed, ministerial duty to remove wild horses and burros from private land upon notification. Roaring Springs, 471 F.Supp. at 526. The duty is nondiscretionary. It was imposed by Congress to benefit the public by keeping the animals on public lands. Id. at

525–26. Private landowners are benefited by having wild horses removed from their land without cost. *Id.*

A meaningful removal remedy under section 4 requires the BLM to remove the horses within a reasonable time. *See Rosado v. Wyman,* 397 U.S. 397, 415, 90 S.Ct. 1207, 1219, 25 L.Ed.2d 442 (1970) (court should construe statutes to give them some meaning); *Wilshire Oil Co. of California v. Costello,* 348 F.2d 241, 243 (9th Cir.1965) (statutes should not be construed as to be rendered meaningless). Although Congress did not provide a time limit within which the animals must be removed, an unreasonable delay would violate the spirit and purpose of the Act. *See Burroughs v. Operating Engineers Local Union No. 3,* 686 F.2d 723, 727 (9th Cir.1982) (where Congress fails to define terms specifically, court should construe statutory language in accordance with the statutory purpose).

A reasonable time for removal of the animals must be determined by the particular facts and circumstances of each case. *Cf. United States v. McConney,* 728 F.2d 1195, 1204 (9th Cir.1984) (whether person acted "reasonably" by community standards is question of fact). Because of the variety of facts and circumstances, it would be imprudent for this court to establish a universal standard. In some cases twenty-four hours may be unreasonable and in other cases a period of several weeks may be entirely reasonable. The reasonable time for removal must be determined by the trier of fact on the particular circumstance of each landowner's request.

## CONCLUSION

We remand to allow the district court to modify its mandatory injunction to require removal of wild horses from the Fallini property within reasonable time of notice that the wild horses have strayed onto their property. The district court should make a determination of what shall constitute a reasonable time for such removal.