**Richard L. BARRON; Linda M. Barron, Plaintiffs–Appellants,**

v.

**Robert REICH;** * **Department of Labor; Robert Kelley, Defendants– Appellees.**

**No. 92–55522.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1993.

Decided Jan. 13, 1994.

* Robert Reich has been substituted for his predecessor, Lynn Martin, as Secretary of the Department of Labor. Fed.R.App.P. 43(c)(1).

**1372**

William D. Evans, Pasadena, CA, for plaintiffs-appellants.

Ford Newman, Asst. U.S. Atty., Washington, DC, for defendants-appellees.

Before: FLETCHER, D.W. NELSON, Circuit Judges, and WILL,** District Judge.

FLETCHER, Circuit Judge:

Richard L. Barron and Linda M. Barron, husband and wife, sought a writ of mandamus compelling the Secretary of Labor and the Secretary of Agriculture to bring an additional enforcement action against the Barrons' employer under the McNamara–O'Hara Service Contract Act, 41 U.S.C. §§ 351 *et seq.* (SCA). The Barrons alleged that their employer had withheld overtime and holiday pay in violation of the SCA. The district court dismissed the action for failure to state a claim. The Barrons argue on appeal that the district court erred both substantively—because they stated a claim under the Mandamus and Venue Act of 1968, 28 U.S.C. § 1361—and procedurally—because the court improperly considered materials outside of the pleadings. We affirm in both respects.

## BACKGROUND

### 1. *Factual and Procedural*

In their complaint, the Barrons state that from 1985 until 1988, they both worked for Tridair Helicopters, Inc. under service contracts Tridair had entered into with the United States Department of Agriculture, Forest Service. The Barrons allege, and appellees do not dispute, that these contracts were covered by the SCA. The Barrons further assert that under the SCA Tridair was required to provide holiday pay and to pay them at the rate of time and one-half for overtime work, and that Tridair failed to do so.

Mr. Barron first discussed his claims for unpaid overtime and holiday pay with Douglas Daigle, president of Tridair, in late 1987 and 1988. He first brought his and his wife's claims to the attention of a government contracting officer in June 1988. In July 1989, Mr. Barron made a written complaint to Richard Willis, the Contracting Officer for the Forest Service in Albuquerque, New Mexico. In April 1990, Mr. Willis forwarded the Barrons' complaint to the Department of Labor. The District Director of the San Diego Wage and Hour Division of the Employment Standards Administration, Department of Labor, responded to Mr. Willis' letter, stating that the Department of Labor would investigate Tridair.

Two months later, the investigation was conducted: going back approximately two years from the date of investigation, the Wage and Hour Division found that Tridair had violated the overtime provisions of the SCA[1] and as a result that the company owed Mr. Barron $602.88. No violations were found with respect to Ms. Barron within the two-year period investigated. In a declaration submitted to the district court together with defendants' motion to dismiss, the Acting District Director of the San Diego office of the Wage and Hour Division explained that it is standard enforcement policy, as stated in a Field Operations Handbook, to restrict investigations to a period of two years preceding the date of their undertaking.[2]

---

** The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, sitting by designation.

1. A declaration submitted by the District Director of the Wage and Hour Division refers to violations of the CWHSSA [Contract Work Hours and Safety Standards Act, 40 U.S.C. §§ 327 *et seq.*] but this is probably an error: there is no indication that the Barrons ever claimed that Tridair had violated anything other than the SCA, and in the form accompanying the check tendered to the Barrons, the Wage and Hour Division identified only SCA violations.

2. The Barrons posit a different reason for the two-year limit on the investigation: they con-

The Barrons were not satisfied with the $602.88 recovered by the Wage and Hour Division on their behalf, and they declined to endorse a check tendered in that amount. Instead, they filed a complaint for a writ of mandamus in district court, where they contended that Tridair owed them back wages of over $22,000 in excess of the amount offered by the Wage and Hour Division. The Barrons named as defendants the Secretaries and the Departments of Labor and Agriculture, the District Director of the Wage and Hour Division, and the Contracting Officer of the Southwestern Region of the Forest Service.

The district court dismissed the action against all defendants, concluding that the Barrons had failed to state a claim under the SCA, and that mandamus could not issue under § 1361 because plaintiffs had not identified a ministerial, nondiscretionary duty on the part of the defendants. The district court made various allusions to materials outside the pleadings, but stated several times in the course of its oral ruling that it was *not* converting the motion to dismiss into a summary judgment motion.

### 2. Statutory Background

A brief overview of the SCA is appropriate. Section 351 of 41 U.S.C., the central provision of the SCA, states, *inter alia*, that contracts to provide services to the government which are in excess of $2,500 must contain minimum wage provisions, and that minimum wages are to be set by the Secretary of Labor in accordance with prevailing rates in the locality. Section 355 excludes from the calculation of overtime pay those fringe benefits which are excluded from such calculation under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.;* by

inference, this section also incorporates the affirmative overtime provisions of the FLSA.

Section 352 deals with violations of the Act. Subsection (a) allows the government to withhold from an employer who has violated the requirements of § 351 such payments due on the contract as are necessary to compensate employees who have been underpaid. Subsection (b) provides that both the Secretary of Labor and the head of the contracting agency may carry out the provisions of subsection (a). Section 354(b) provides that if the accrued payments withheld are insufficient to compensate underpaid employees, the government may sue the employer or its sureties.

■ Given this statutory structure, this court held over a decade ago that employees have no private right of action against their employers under the SCA. In *Miscellaneous Serv. Workers v. Philco–Ford Corp.* (*MSW*), 661 F.2d 776 (9th Cir.1981), this court, following the four-part test of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1972), concluded that "it would be flatly inconsistent with the express provision of a limited governmental cause of action to imply a wide ranging private right of action as an alternative to a government suit," and that "plaintiffs' grievances l[ie] with the Secretary and not in the courts." 661 F.2d at 780–81. *MSW* has subsequently been followed with noteworthy approval by the Eleventh and the D.C. Circuits. *District Lodge No. 166, Int'l Ass'n of Machinists v. TWA Servs., Inc.*, 731 F.2d 711, 714–16 (11th Cir.1984), *cert. denied*, 469 U.S. 1209, 105 S.Ct. 1175, 84 L.Ed.2d 324 (1985); *Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1226–29 (D.C.Cir.1991).

The parties to this action are thus in complete agreement that the Barrons could not

clude that the Wage and Hour Division was applying the wrong statute of limitations. As appellees point out, this conclusion appears to be based on a misreading of the receipt sent to the Barrons along with their check: that form explains that acceptance of back wages under the *Fair Labor Standards Act* constitutes waiver of the right to sue for unpaid wages and liquidated damages under that statute, and then goes on to state that "[g]enerally, a 2-year statute of limitations applies to the recovery of back wages."

Receipt for Back Wages to Richard Barron from Tridair Helicopters, dated August 31, 1990. This reference to the statute of limitations appears to be made in an effort to inform FLSA claimants of their alternatives should they choose to file suit instead of accepting an administrative remedy. There is no indication, however, that the reference to a limitations period pertaining to private actions has any application to SCA claimants, since under the SCA, as explained below, an employee's *only* remedy is an administrative one.

have sued Tridair directly under the SCA. The conclusions they draw from that fact, however, are directly conflicting: the Barrons argue that it is precisely because they cannot sue Tridair that they must be allowed to proceed against the federal officials under the mandamus statute, while appellees suggest that the rule of *MSW* would be circumvented if the Barrons were allowed to do indirectly—via mandamus—what they clearly cannot do directly—through a suit against their employer.

## DISCUSSION

Jurisdiction below was proper under 28 U.S.C. § 1361, which states that "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Appellate jurisdiction is proper under 28 U.S.C. § 1291. Notice of appeal was timely filed.

1. *Failure to state a claim under § 1361*

■ We review de novo the district court's dismissal of the action for failure to state a claim. *Klarfeld v. United States*, 944 F.2d 583, 585 (9th Cir.1991), *reh'g en banc denied*, 962 F.2d 866 (9th Cir.1992). In evaluating a Rule 12(b)(6) motion, we accept all material allegations in the complaint as true, and construe them in the light most favorable to plaintiff. *Id.* Only if plaintiff " 'can prove no set of facts in support of his claim which would entitle him to relief' " is dismissal warranted. *Id.* (quoting *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987)).

■ Mandamus is an extraordinary remedy. *Stang v. IRS*, 788 F.2d 564, 565 (9th Cir.1986). A writ of mandamus is appropriately issued only when (1) the plaintiff's claim is "clear and certain"; (2) the defendant official's duty to act is ministerial, and "so plain-

ly prescribed as to be free from doubt"; and (3) no other adequate remedy is available. *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir.1986) (internal citations omitted).

a. *Appellants' claim*

In *District Lodge v. TWA*, the decision most closely on point, the Eleventh Circuit held, after concluding that no private cause of action was available under the SCA, that for precisely that reason plaintiff had failed to meet the first prong of the three-part mandamus test—a clear right to the relief sought. The Eleventh Circuit explained that

[i]t is obvious that plaintiff seeks relief by way of mandamus from the federal defendants solely as a means of obtaining back wages from [the employer]. Lacking such a right directly under the statute, it urges the court to compel the defendants to undertake actions which would indirectly result in the same back wages from [the employer] that it is precluded from seeking directly. We refuse to blind ourselves to the inequity of granting plaintiff relief which is not an end in itself but is merely a means to an end which plaintiff could not obtain except by this end run.

731 F.2d at 717. The absence of a private cause of action in the underlying statute, to the Eleventh Circuit, spelled the failure of plaintiff's mandamus claim.

The Barrons, as noted above, draw exactly the opposite conclusion from the fact that they have no claim under the SCA: they argue that it is because they are without private recourse against their employer that they must be granted a writ against the federal officials. While no case we are aware of adopts this logic, the Barrons' position does gain some support from *Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown*, 656 F.2d 564 (10th Cir. 1981): in that case, where plaintiffs sought to compel defendant officials' compliance with the SCA as well as with other federal wage standards legislation, the Tenth Circuit reversed the district court's dismissal of plaintiff's mandamus claim, and simply did not discuss the question of whether the absence of a private cause of action might preclude mandamus relief. *Id.* at 567–69.

More recently, the question of whether a private cause of action in the underlying statute is a prerequisite for mandamus has

been considered within the context of § 701(i) of the Immigration Reform and Control Act of 1986, 8 U.S.C. § 1252(i). In *Soler v. Scott,* 942 F.2d 597 (9th Cir.1991), this court, implicitly agreeing that petitioner had no cause of action under § 701(i), nevertheless ruled that mandamus was appropriate, and held that "a petitioner who has alleged a cause of action under the APA or the Mandamus Act need not rely upon an implied right of action under any other statute." *Id.* at 604–05. *Soler,* however, is not reliable authority: after the Supreme Court granted certiorari in that case, petitioner's claim was rendered moot by his release from prison, and the Supreme Court vacated the case with directions to dismiss. *Sively v. Soler,* —— U.S. ——, 113 S.Ct. 454, 121 L.Ed.2d 364 (1992).

Other circuit courts facing the question presented in *Soler* have reached just the opposite conclusion about the relationship between a private cause of action and the availability of mandamus relief: in *Gonzalez v. U.S. Immigration and Naturalization Serv.,* 867 F.2d 1108, 1110 (8th Cir.1989), the Eighth Circuit held that because an incarcerated alien had no private cause of action under § 701(i), mandamus also would not lie. *See also Aguirre v. Meese,* 930 F.2d 1292, 1293 (7th Cir.1991) (following *Gonzalez* ). In *Giddings v. Chandler,* 979 F.2d 1104, 1107–10 (5th Cir.1992), the Fifth Circuit took a middle course, affirming dismissal of a claim under the Mandamus Act because the incarcerated alien was not within the "zone of interests" protected by § 701(i).

In this case, we need not decide whether a plaintiff who lacks a private right of action under the underlying statute might nevertheless be able to show the clear right to relief required under the Mandamus Act. However that question might be answered as a general matter, on the facts presented in *this* case appellants' claim is anything but clear. The dubious nature of the Barrons' claim—which turns on the right to compel the government to initiate suit—is simply the flip side of the discretionary nature of appellees' duty.

### b. *Appellees' duty*

■ The district court concluded that any duty defendant officials may have had to expand the investigation into Tridair's alleged wrongdoing beyond the two-year limit employed by the Wage and Hour Division was discretionary rather than ministerial. The text and the purpose of the SCA, as well as the facts of this case, support that conclusion.

Although 41 U.S.C. § 352(a) states that employers *shall* be liable for violations of the SCA, no portion of the statute imposes a duty on the Secretary of Labor to investigate every claim of alleged underpayment which is made by an employee, or to take an employer to task every time a violation is found. Indeed, the section of the SCA which is most closely related to the relief sought by the Barrons states only that under certain circumstances the government "*may* bring action against" the employer to recover underpayments. 41 U.S.C. § 354(b) (emphasis added). The language used in the enforcement provisions of the SCA is thus a far cry from the mandatory language relied upon by courts which *have* found that issuance of a writ may be warranted. *See Brown,* 656 F.2d at 569 (citing, *inter alia,* 29 C.F.R. § 5.6(a)(3), which states that a federal agency "*shall* cause such investigations to be made as may be necessary to assure compliance with the labor standards clauses required by [applicable statutes]" (emphasis added)); *see also Leedom v. Kyne,* 358 U.S. 184, 186–89, 79 S.Ct. 180, 182–84, 3 L.Ed.2d 210 (1958) (court has jurisdiction to set aside a determination made by the National Labor Relations Board where the Board indisputably violated 29 U.S.C. § 159(b)(1), which states that the Board "*shall not* " include professional employees in the same unit as non-professional employees without the consent of the former (emphasis added)). By contrast, the relevant provisions of the SCA, and particularly the permissive language of § 354, strongly indicate that the duty the Barrons seek to enforce is discretionary rath-

er than ministerial.[3] The same is true of the regulations pertaining to the SCA. *See* 29 C.F.R. § 6.15 (enforcement actions under the SCA *may* be instituted by the Department of Labor); *see also* 29 C.F.R. § 4.102 (Secretary of Labor is *authorized* to administer and enforce provisions of the SCA).

■ This does not necessarily end the inquiry, however. While mandamus may not be used to impinge upon an official's legitimate use of discretion, " 'even in an area generally left to agency discretion, there may well exist statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised. In these situations, mandamus will lie when the standards have been ignored or violated.' " *Brown*, 656 F.2d at 566 (quoting *Davis Assocs., Inc. v. Secretary, Dep't of Hous. & Urban Dev.*, 498 F.2d 385, 389 & n. 5 (1st Cir.1974)). Thus, before concluding that plaintiffs have failed to state a claim under the mandamus statute, we must ascertain whether or not defendant officials, in their exercise of discretion, strayed outside the bounds of the SCA.

■ Here again, appellants are able to point to no standard which appellees have violated. Nor have they alleged that appellees failed entirely to carry out statutory purposes, as was the case in *Estate of Smith v. Heckler*, 747 F.2d 583, 591 (10th Cir.1984) ("This is not a question of controlling the Secretary's discretion because the Secretary has failed to discharge her statutory duty altogether"), and in *Brown*, 656 F.2d at 568 (plaintiffs complain of a "complete failure of federal officials to comply with mandatory statutory and regulatory directives"). The

reason for this latter gap in appellants' argument becomes apparent in light of the district court's observation that the two-year policy may enable the Department of Labor to conserve scarce resources with respect to any given investigation—and thus may leave more resources to be expended on other investigations or other activities under the SCA. In the long run the two-year policy may well fulfill, not contravene statutory purposes. Given this context, appellees acted well within the bounds of their discretion.

Notwithstanding this analysis, we recognize that the Barrons are in an unfortunate position. The SCA bars them from suing their employer themselves, and the Department of Labor, which has been assigned responsibility for enforcing their rights in their stead, has adopted a policy which, in their case, precludes effective relief. Our power under the Mandamus Act, however, is limited. We may grant the writ only when an official has failed to perform a duty which is clearly ministerial. Because Congress has not imposed such a duty on defendants in this case, mandamus cannot issue.[4]

### c. *Statute of limitations*

■ In an effort to avoid this conclusion, the Barrons argue strenuously that both caselaw and Labor Department regulations make it clear that a six-year limitations period pertains to actions brought under the SCA. *United States v. Deluxe Cleaners & Laundry, Inc.*, 511 F.2d 926, 929 (4th Cir. 1975); 29 C.F.R. § 4.187(c). Appellants argue that the Department of Labor had a clear duty to adhere to a six-year limitations period, and that it breached that duty by

---

**3.** Unsurprisingly, agency decisions regarding enforcement are particularly likely to be discretionary. In *Heckler v. Chaney*, 470 U.S. 821, 831–32, 105 S.Ct. 1649, 1655–56, 84 L.Ed.2d 714 (1985), the Supreme Court stated that

> an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the

action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities.

*A fortiori*, a decision about the *extent* of enforcement to be undertaken in a given case *is also* likely to be discretionary.

**4.** Since appellants have not shown that the appellees failed to perform a nondiscretionary duty, or that they strayed outside the bounds of discretion, the court need not reach the third prong of the three-part mandamus test—availability of other relief.

employing its two-year policy instead. This argument is unpersuasive. A statute of limitations sets only an outer temporal limitation for enforcement; it does not impose a duty to prosecute all violations falling within that limit. Appellants seek to convert the shield provided by the statute of limitations into a mandatory enforcement duty, and thereby into a sword in the service of mandamus. That position is not tenable.

2. *Allusions to materials outside the pleadings*

■ Appellants contend that the district court improperly went outside the pleadings in granting appellees' Rule 12(b)(6) motion. As noted above, the district court recognized that both parties had submitted materials outside of the pleadings. The court alluded to the facts contained in those affidavits in its factual summary, although it stated repeatedly that its ruling was made under Rule 12(b)(6), and not under Rule 56.

The only arguably important fact contained in the challenged affidavits—and it is a fact which is referred to in the district court's analysis—is that the Wage and Hour Division imposes a two-year limit on investigations as a matter of policy, and that this policy is embodied in a Department of Labor Field Operations Handbook.

Assuming *arguendo* that the district court relied on this fact, such reliance still does not constitute error. While the general rule in this circuit, as in others, is that a district court may not grant a motion to dismiss which has been converted into a summary judgment motion without furnishing all parties an opportunity to supplement the record, *Mack v. South Bay Beer Distribs., Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986), that rule does not pertain when the additional facts considered by the court are contained in materials of which the court may take judicial notice. *Id.* Records and reports of administrative bodies—such as the handbook referred to in the Wiley Declaration—clearly constitute such materials. *Id.* Thus if the district court relied on the fact that the Wage and Hour Division followed a two-year policy, that reliance was not erroneous.

Appellants also complain that the district court relied on the fact that they "fail[ed] to make any written demands of USDL until 1988." Appellants' Brief at 10. This fact does not appear in the affidavit submitted by appellees, and Mr. Barron's own declaration states that the first written demand was made in 198*9*, while the Barrons' complaint states variously that their first claim was made in June 1988 and in June 1989.

In any event, it is far from clear why appellants think that the date on which written demand first was made has any significance at all. The Barrons appear to believe that the district court concluded that by waiting until that date, they forfeited any prior right against Tridair. The district court, however, said nothing about forfeiture, and appears to have mentioned the first filing date simply to lay to rest any argument that the Wage and Hour Division should have gone outside of its two-year policy by incorporating earlier complaints. On appeal, the Barrons do not argue that appellees had any such duty, and they cite no authority which would support the existence of one. In short, the Barrons' references on appeal to the date of their first written claim are without significance to the disposition of this case, and the district court's references to materials outside the pleadings which allude to those dates are also insignificant.

The district court's order dismissing appellants' complaint was neither procedurally nor substantively defective.

AFFIRMED.